**NORDBERG, INC., Plaintiff–Appellee,**

**v.**

**TELSMITH, INC., Defendant–Appellant.**

No. 95–1316.

United States Court of Appeals,
Federal Circuit.

April 24, 1996.

Roger D. Greer, Greer, Burns & Crain, Ltd., Chicago, Illinois, argued, for plaintiff-appellee. With him on the brief, was Lawrence J. Crain.

Andrew J. Nilles, Nilles & Nilles, S.C., Milwaukee, Wisconsin, argued, for defendant-appellant. With him on the brief, were James E. Nilles and John P. Fredrickson.

Before MICHEL, PLAGER, and LOURIE, Circuit Judges.

LOURIE, Circuit Judge.

Telsmith, Inc. appeals from a decision of the United States District Court for the Eastern District of Wisconsin holding that Nordberg, Inc. did not engage in inequitable conduct during the prosecution of U.S. Patent 4,478,373 and finding that the case was not "exceptional" under 35 U.S.C. § 285. *Nordberg, Inc. v. Telsmith, Inc.*, 881 F.Supp. 1252, 36 USPQ2d 1577 (E.D.Wis.1995). Because Telsmith has not demonstrated error in the court's decision, we affirm.

## BACKGROUND

Nordberg, owner of the '373 patent directed to a gyratory rock crusher, sued Telsmith for infringement. Telsmith counterclaimed for a declaration that the asserted claims were invalid, unenforceable, and not infringed. After a bench trial, the district court found that the asserted claims were invalid for obviousness over the prior art, which included Nordberg's own Saunders U.S. Patent 3,125,304. The court also held that the claims were invalid based on Nordberg's public use of the claimed invention at a quarry owned and operated by the Tanner Company in Phoenix, Arizona, more than one year before the filing date of the patent application. Nordberg has not appealed these determinations.

Although holding the patent invalid, the court rejected Telsmith's claim that the patent was unenforceable because of Nordberg's conduct. The court found that the Saunders patent and Tanner use constituted material prior art that was not disclosed to the United States Patent and Trademark Office ("PTO") during prosecution of the '373 patent. The court also found, however, that the Nordberg employees who were under a duty of disclosure, including those who prosecuted the '373

patent, were unaware of the existence of the Saunders patent during prosecution. Thus, the court found that Nordberg did not conceal the Saunders patent. The court further found that the relevant Nordberg employees did not conceal the Tanner use from the PTO with the intent to mislead, because they believed in good faith that the field testing at Tanner occurred under a confidentiality agreement and thus was not material prior art. Because the court found no intention by Nordberg to mislead the PTO, it held that Nordberg did not engage in inequitable conduct.

## DISCUSSION

■ We review the district court's conclusion concerning inequitable conduct for abuse of discretion. *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178, 33 USPQ2d 1823, 1827 (Fed.Cir.1995). An abuse of discretion may be established by showing that the court based its ruling on clearly erroneous factual findings, an error of law, or a clear error of judgment. *Id.*

Telsmith challenges the court's determination that Nordberg did not engage in inequitable conduct.* Telsmith asserts that Nordberg knew or should have known of the Saunders patent because Nordberg owned the patent, and a copy of the patent was in its files, which Nordberg allegedly routinely searched before filing patent applications. In addition, Telsmith argues that a Nordberg memorandum stating that the Tanner use might pose patentability problems in "absolute novelty" countries compels the inference that Nordberg knew that the Tanner use was material prior art. Telsmith further contends that the high materiality of the Saunders patent and the Tanner use requires an inference of an intent by Nordberg to mislead the PTO, which Nordberg did not rebut.

■ We consider these contentions to be unpersuasive. The district court found that the Nordberg employees who were under a duty of disclosure were unaware of the Saunders patent during prosecution of the '373 patent. This finding is not clearly

---

* Despite the fact that the patent has been held invalid, a holding which has not been appealed, the question of inequitable conduct is relevant to a possible award of attorney fees.

erroneous. Although a copy of the Saunders patent was in Nordberg's files, the files contained several hundred patents and there was no showing that any Nordberg employee actually searched the files and found a copy of the Saunders patent during the pendency of the '373 patent application. Moreover, the unrebutted testimony of Nordberg's in-house patent counsel indicated that regular searching of in-house prior art files began only recently, after the prosecution of the '373 patent. Thus, the court did not clearly err in finding that the relevant Nordberg employees were unaware of the Saunders patent during prosecution. Furthermore, since Nordberg could not have "concealed" a prior art reference of which it was unaware, the district court did not clearly err in finding that Nordberg did not conceal the Saunders patent with the intent to mislead the PTO.

■ Telsmith seeks to overcome the fatal lack of evidence that the relevant Nordberg employees knew of the Saunders patent's existence by contending that "Federal Circuit precedent does not require proof of actual knowledge of the withheld prior art, but only ... proof that the applicant or its representatives 'should have known of the art or information,'" citing our decisions in *Molins PLC*, 48 F.3d at 1178, 33 USPQ2d at 1826, and *FMC Corp. v. Manitowoc Co.*, 835 F.2d 1411, 1415, 5 USPQ2d 1112, 1116 (Fed.Cir. 1987). We long ago rejected this contention, *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1362, 220 USPQ 763, 772 (Fed.Cir.) ("Nor does an applicant for patent, who has no duty to conduct a prior art search, have an obligation to disclose any art of which, in the [district] court's words, he 'reasonably should be aware.'"), *cert. denied*, 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984), and neither *FMC Corp.* nor *Molins PLC* held to the contrary. Indeed, our decision in *FMC Corp.*, far from supporting Telsmith's position, is directly to the contrary. There was no dispute in that case that the patentee knew of the undisclosed information's existence; only knowledge of the information's materiality was in dispute. 835 F.2d at 1416, 5 USPQ2d at 1116. After noting that proof that the applicant knew of a reference's materiality "may be rebutted by a showing that ... [the]

applicant did not know of that art or information," we discussed the "should have known" standard in connection with the reference's materiality:

> Applicant must be chargeable with knowledge of the existence of the prior art or information, for it is impossible to disclose the unknown. Similarly, an applicant must be chargeable with knowledge of the materiality of the art or information; yet an applicant who knew of the art or information cannot intentionally avoid learning of its materiality through gross negligence, i.e., it may be found that the applicant "should have known" of that materiality.

*Id.* at 1415, 835 F.2d 1411, 5 USPQ2d at 1115–16 (citation omitted). Similarly, in *Molins PLC*, we simply observed that "[o]ne who alleges inequitable conduct arising from a failure to disclose prior art must offer clear and convincing proof of," *inter alia*, "knowledge chargeable to the applicant of that prior art." 48 F.3d at 1178, 33 USPQ2d at 1826. It was undisputed that the applicant in *Molins PLC* knew of the existence of the undisclosed references, and the case thus cannot stand for the proposition that Telsmith would have us draw from it. Telsmith's contention that the "failure of disclosure" form of inequitable conduct can be shown with proof that the applicant did not but should have known of a reference's existence runs counter to *American Hoist* and subsequent cases and must therefore be rejected. As we held in *American Hoist*, the applicant's *actual* knowledge of the reference's existence must be proved.

■ The court also found that the Nordberg employees who were under a duty of disclosure believed in good faith that the Tanner use occurred under a confidentiality agreement and thus was not material prior art. Again, Telsmith has not demonstrated that this finding is clearly erroneous. Telsmith relies on an internal Nordberg memorandum, which stated in relevant part:

> Since the machine has been put in the field, even though a confidentiality exists between ourselves and Tanner, it could be construed because of the relatively open location near the airport and the free visit-

ing by various dealer personnel that the machine may not be patentable in the absolute novelty countries because of disclosure. This may be a negative factor in the potential and value for licensing the machine to our present licensees or for providing initial advantage to the marketing efforts of our overseas locations once the machine becomes a product.

Since the memorandum states that "a confidentiality [agreement] exists between [Nordberg] and Tanner," it supports, rather than undermines, the district court's finding that the relevant Nordberg employees believed in good faith that the Tanner use occurred under a confidentiality agreement and therefore was not material prior art. Furthermore, since the United States is not an "absolute novelty" country, the statement that the invention "may not be patentable in the absolute novelty countries" is not necessarily inconsistent with, let alone sufficient to establish clear error in, the court's finding that Nordberg believed that the Tanner use was not material prior art. Thus, because the court did not clearly err in finding that Nordberg believed that the Tanner use was not material prior art, the court did not clearly err in finding that Nordberg did not conceal the Tanner use with the intent to mislead the PTO.

■ Telsmith has accordingly not shown that the district court clearly erred in finding that Nordberg did not conceal the Saunders patent and/or the Tanner use with the intent to mislead the PTO. Furthermore, because Telsmith did not make a threshold showing of intent by Nordberg to mislead the PTO, Nordberg had no burden to produce evidence of good faith and the court properly declined to balance materiality and intent. We have considered Telsmith's remaining allegations of a "pattern of misconduct and deception" by Nordberg, but find them unpersuasive. We therefore conclude that the district court did not abuse its discretion in holding that Nordberg did not engage in inequitable conduct.

■ Telsmith also argues that the district court erred in finding that this was not an "exceptional" case under 35 U.S.C. § 285. We disagree with Telsmith. The court did not abuse its discretion in holding that Nordberg did not engage in inequitable conduct, and it did not err in rejecting Telsmith's contention that Nordberg commenced and continued litigating this case in bad faith. Thus, the court did not clearly err in finding that this was not an "exceptional" case under 35 U.S.C. § 285.

■ In its brief, Nordberg alleges that Telsmith's appeal was frivolous. During oral argument, however, Nordberg withdrew its allegation after the court pointed out that it was substantively and procedurally deficient. See Fed.R.App.P. 38 (requiring separately filed motion or notice from the court and opportunity to respond). An allegation of a frivolous appeal should not be made cavalierly. We caution Nordberg and its counsel that "[u]nfounded requests for sanctions are themselves frivolous and sanctionable." *Atlantic Thermoplastics Co. v. Faytex Corp.*, 970 F.2d 834, 835 n. 1, 23 USPQ2d 1481, 1482 n. 1 (Fed.Cir.1992).

■ While Telsmith was entitled to appeal the denial of its claim, its counsel was not entitled to disrupt the oral argument with a display of temper. During his rebuttal argument, counsel turned around, pointed a finger at opposing counsel, and heatedly said: "These two lawyers are bad lawyers. They deceived the examiners, they deceived the trial judge, and then they pull this here." This court is accustomed to hearing forceful argument. However, counsel's outburst was unacceptable. Strong conviction concerning the merits of one's case is not justification for losing one's composure at oral argument and making pointed accusations at opposing counsel. Opposing attorneys are expected to disagree concerning the merits of their cases. However, the essence of legal process is rational and civil advocacy of one's position. Angry, intemperate verbal attacks have no place in this court.

We caution counsel that improper conduct in the courtroom may be sanctionable. *See* Fed.R.App.P. 46(c) (conduct unbecoming a member of the bar is sanctionable). However, because counsel promptly apologized for his remarks when he was admonished from the bench during argument, we will let the

incident pass with a warning that such conduct is not acceptable.

*AFFIRMED.*