**BRUNO INDEPENDENT LIVING AIDS, INC., Plaintiff,**

v.

**ACORN MOBILITY SERVICES LTD. and ACORN STAIRLIFTS, INC., Defendants.**

No. 02–C–0391–C.

United States District Court, W.D. Wisconsin.

Aug. 14, 2003.

Thomas M. Pyper, Whyte Hirschboeck Dudek S.C., Madison, For: Bruno Independent Living Aids, Inc., for Plaintiffs.

Michael E. Florey, Fish & Richardson P.C., P.A., Minneapolis, MN, For: Acorn Mobility Services Ltd. Acorn Stairlifts, Inc., for Defendants.

## OPINION AND ORDER

CRABB, District Judge.

In this civil action, plaintiff Bruno Independent Living Aids, Inc. contended that defendants Acorn Mobility Services Ltd. and Acorn Stairlifts, Inc. (1) infringed plaintiff's U.S. Patent No. 5,230,405, which is directed to a stairway chairlift device that transports disabled individuals up and down a staircase; (2) sold their product below cost in violation of the Antidumping Act, 15 U.S.C. § 72; and (3) engaged in deceptive advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). Defendants filed a counterclaim, seeking a declaration of non-infringement and invalidity of the '405 patent.

After plaintiff conceded that all patent claims at issue in this lawsuit were invalid, I granted defendants' motion for summary judgment on May 16, 2003. In that same order, I granted plaintiff's motion for a voluntary dismissal with prejudice of its Antidumping Act and Lanham Act causes of action.

Now before the court are defendants' motion for attorney fees as to plaintiff's patent infringement and Lanham Act claims, plaintiff's motion for sanctions and defendants' motion for costs as the prevailing party. Because plaintiff failed to dis-

close material prior art to the patent office, defendants' motion for attorney fees will be granted as to plaintiff's patent infringement claim. However, defendants have failed to show that plaintiff's Lanham Act claim was so lacking in merit that an award of attorney fees is warranted. Therefore, defendants' motion for attorney fees as to this claim will be denied. Plaintiff supplied no argument in support of its motion for sanctions, so the motion will be denied. Finally, as is routine procedure, the clerk of court will determine defendants' motion for costs.

## OPINION

### A. Motion for Attorney Fees

#### 1. Patent infringement

■ A court may award reasonable attorney fees to the prevailing party in "exceptional cases." 35 U.S.C. § 285. Merely prevailing is not enough to show that a case is exceptional; there must be evidence of bad faith, fraud, gross negligence or unclean hands on the part of the losing party. To put it another way, a court may find a case exceptional if the conduct of the losing party would make it grossly unjust for the prevailing party to be left with the burden of litigation expenses. *Badalamenti v. Dunham's, Inc.,* 896 F.2d 1359, 1364 (Fed.Cir.1990). The exceptional case inquiry is a two-step process: determining whether the case is exceptional and, if so, deciding whether to award attorney fees to the prevailing party. The second finding does not follow automatically from the first because the court retains discretion to award or withhold attorney fees even in exceptional cases. *J.P. Stevens Co., Inc. v. Lex Tex Ltd., Inc.,* 822 F.2d 1047, 1050 (Fed.Cir. 1987); *Delta–X Corp. v. Baker Hughes Production Tools, Inc.,* 984 F.2d 410, 414 (Fed.Cir.1993).

In the case of a prevailing accused infringer, exceptional conduct includes but is not limited to inequitable conduct by the patentee in obtaining the patent or pursuing the litigation. *Cambridge Prods. Ltd. v. Penn Nutrients, Inc.,* 962 F.2d 1048, 1050–51 (Fed.Cir.1992) (" 'exceptional cases' are normally those of bad faith litigation or those involving fraud or inequitable conduct by the patentee in procuring the patent"); *see also Beckman Instruments, Inc., v. LKB Produkter AB,* 892 F.2d 1547, 1551 (Fed.Cir.1989). Exceptional conduct must be supported by clear and convincing evidence. *Beckman,* 892 F.2d at 1551; *Reactive Metals and Alloys Corp. v. ESM Inc.,* 769 F.2d 1578, 1582 (Fed.Cir.1985).

■ Plaintiff argues that defendants' allegations of failure to disclose material prior art to the patent office amount to a claim of inequitable conduct and, thus, require the district court to "determine that the information *known* to the inventors or their representatives was both material and *intentionally* withheld." Dfts.' Reply, dkt. # 89, at 3 (emphasis added by plaintiff) (citing *Brasseler U.S.A. I.L.P. v. Stryker Sales Corp.,* 267 F.3d 1370, 1380 (Fed.Cir.2001)). In other words, plaintiff is arguing that defendants must prove actual knowledge. Defendants disagree, arguing that the court of appeals' holding in *Brasseler* is not applicable because defendants are asserting only an exceptional case claim of failure to disclose material prior art, and not a claim of inequitable conduct. Therefore, defendants contend, they need show only that plaintiff's conduct before the patent office fell short of fraud but amounted to something more than simple negligence. *See Monolith Portland Midwest Co. v. Kaiser Aluminum & Chemical Corp.,* 407 F.2d 288, 294 (9th Cir.1969) ("An applicant's fraud on the Patent Office is enough standing alone to convert his later infringement action into an exceptional case within the meaning of

section 285. But conduct short of fraud and in excess of simple negligence is also an adequate foundation for deciding that a patent action is exceptional."); *see also L.F. Strassheim Co. v. Gold Medal Folding Furniture Co.*, 477 F.2d 818, 824 n. 9 (7th Cir.1973) ("Fee awards pursuant to § 285 are most frequently predicated on a claim of fraud. In such cases we have required clear and definite proof of fraud.... The 'exceptional case' justification for the allowance of fees is not, however, limited to the fraud category.").

Despite defendants' effort to characterize their allegations as something less than a charge of inequitable conduct, case law and treatises treat a failure to disclose material prior art as an act of inequitable conduct. *See Brasseler*, 267 F.3d at 1380 (noting that "prevailing party may prove the existence of an exceptional case by showing[ ] inequitable conduct before the PTO"); *Nordberg v. Telsmith, Inc.*, 82 F.3d 394, 397 (Fed.Cir.1996) (referring to "failure to disclose" as a "form of inequitable conduct"); *see also* 7 *Chisum on Patents* § 20.03[4][c] (2002) ("In the case of a prevailing accused infringer, [exceptional] circumstances may consist of inequitable conduct by the patentee in obtaining the patent or pursuing litigation").

■ Nomenclature aside, the Court of Appeals for the Federal Circuit has held that it "long ago rejected" the contention that "Federal Circuit precedent does not require proof of actual knowledge of the withheld prior art, but only ... proof that the applicant or its representatives 'should have known of the art or information.'" *Nordberg*, 82 F.3d at 397 (citing *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1362 (Fed.Cir.1984) ("Nor does an applicant for patent, who has no duty to conduct a prior art search, have an obligation to disclose any art of which, in the [district] court's words, he 'reasonably should be aware.'")). The Federal Circuit

requires proof of knowledge of the *existence* of prior art; once this is proved the party opponent can attempt to show that the patent applicant knew or should have known of the *materiality* of the prior art.

In *Nordberg*, the court discussed the interplay of the "should have known" and "knowledge" standards with respect to allegations that the applicant had failed to disclose material prior art to the patent office:

Applicant must be chargeable with knowledge of the existence of the prior art or information, for it is impossible to disclose the unknown. Similarly, an applicant must be chargeable with knowledge of the materiality of the art or information; yet an applicant who knew of the art or information cannot intentionally avoid learning of its materiality through gross negligence, i.e., it may be found that the applicant "should have known" of that materiality.

*Id.* at 397 (citing *FMC Corp. v. Manitowoc Co.*, 835 F.2d 1411, 1415 (Fed.Cir.1987)). The court of appeals added that it is not enough for an opponent to show that an applicant did not know of a reference's existence but should have known. "As we held in *American Hoist*, the applicant's *actual* knowledge of the reference's existence must be proved." *Nordberg*, 82 F.3d at 397 (emphasis in original); *see also Brasseler*, 267 F.3d at 1380 ("Where an applicant knows of information the materiality of which may be readily be determined, he or she cannot intentionally avoid learning of its materiality, even through gross negligence; in such cases the district court may find that the applicant should have known of the materiality of the information."). Therefore, to succeed on their failure to disclose allegation, defendants must show that plaintiff had *knowledge* of the existence of prior art but need show only that plaintiff *should have known* of

that prior art's materiality. Both intent and materiality are questions of fact that must be proven by clear and convincing evidence. *Dayco Products, Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1362 (Fed.Cir.2003).

I turn then to the substance of defendants' failure to disclose allegations. It is undisputed that this infringement lawsuit focused on two features claimed in the '405 patent: (1) a seat assembly swivel mechanism that permitted the seat to rotate 90 degrees while the unit remained situated close to the wall; and (2) an arcuate adjustment slot that allowed the unit to be adjusted on-site to compensate for the varying slopes of staircases. Also, it is undisputed that the features that caused plaintiff to concede invalidity were disclosed in the prior art relating to the Stair–Glide Model 65 (arcuate adjustment), Stair–Glide Model 37 (seat assembly) and Cheney Wecolator (seat assembly). (Although it appears that plaintiff concedes that other stairlifts also invalidate the '405 patent claims at issue, the briefs focus primarily on the Stair–Glide 65, Stair–Glide 37 and Cheney Wecolator.) The American Stair–Glide Company, Inc. made the Stair–Glide units and Cheney Manufacturing, Inc. made the Wecolator. American Stair–Glide purchased Cheney Manufacturing in 1990, although the companies remained separate. The Stair–Glide 65 was sold from 1986 through 1995 and the Stair–Glide 37 was sold from 1988 through 1995.

Defendants allege that plaintiff had actual knowledge of this material prior art (Stair–Glide 65, Stair–Glide 37 and Cheney Wecolator) and failed to disclose it to the patent office. Specifically, defendants argue that (1) a letter to the U.S. Food and Drug Administration shows that plaintiff considered the '405 stairlift to be "substantially equivalent" to the Stair–Glide units and Cheney Wecolater and yet plaintiff failed to disclose this prior art to the pat-

ent office; (2) the circumstantial evidence indicates that plaintiff should have known and actually knew of the prior art because, for example, plaintiff's founder, Michael Bruno, was head of marketing and an owner of the Cheney Company and the '405 patent inventor, Robert Bartelt, worked for Cheney for 18 years building stairlifts before working for plaintiff.

After plaintiff filed the '405 patent application, it learned that stairlifts were regulated by the Food and Drug Administration as medical devices. Therefore, plaintiff needed FDA approval to sell the '405 stairlift in the United States. In an April 20, 1992 letter to the FDA, plaintiff asserted the following:

> Substantial Equivalence: This product is similar in design and function to those manufactured and marketed by Cheney Manufacturing Inc. and American Stair–Glide Company, Inc. Copies of product information from these similar products are enclosed. Information supporting an equivalency determination will be made available upon request to any person.

A handwritten notation at the end of the letter indicates that plaintiff submitted brochures for the Cheney Wecolator and an unidentified unit to the FDA with the letter. Defendants argue that even though plaintiff asserted to the FDA that the Cheney Wecolator and Stair–Glide stairlifts were "substantially equivalent" to the '405 stairlift in order to obtain FDA approval, it failed to disclose this same information to the patent office as prior art. Defendants contend that plaintiff's letter to the FDA is direct evidence that it knew of the Stair–Glide units and the Cheney Wecolator stairlifts. Plaintiff argues that although it stated that the '405 stairlift was substantially equivalent to Stair–Glide units and Cheney Wecolator, it did so only because its stairlift satisfied the

same ANSI/ASME standards that the Cheney Wecolator and Stair–Glide stairlifts had satisfied. In other words, plaintiff argues that notwithstanding its statement to the FDA to the contrary, it never actually compared its stairlift against Stair–Glide units or the Wecolator. I am unpersuaded for several reasons.

First, even if plaintiff's argument were true, it would still mean that before the patent issued, plaintiff had actual knowledge of some Stair–Glide units and the Cheney Wecolator in particular. (Plaintiff concedes that it knew of the Cheney Wecolator and of a Stair–Glide model that "looked like" Model 37.) Second, plaintiff's letter to the FDA touts the '405 stairlift as being substantially equivalent to Stair–Glide units and Cheney Wecolator. Plaintiff does not say that the asserted equivalence is based only on mutual use of required ANSI/ASME standards. Also, plaintiff indicates in the letter that it is in possession of product information regarding these self-described substantially equivalent stairlifts. Such product information qualifies as prior art. 35 U.S.C. § 301 (prior art consists of "patents or printed publications"). Finally, although plaintiff does not refer to Stair–Glide Models 65 or 37 specifically, plaintiff does not maintain that it was referring to some other Stair–Glide model. *See Hewlett–Packard Co. v. Bausch & Lomb, Inc.*, 882 F.2d 1556, 1562 (Fed.Cir.1989) (intent to mislead patent office may be inferred from circumstantial evidence). More damning than plaintiff's silence, however, is the fact that plaintiff never submitted prior art concerning *any* Stair–Glide stairlift to the patent office, including copies of the brochures it had provided to the FDA. *See Brasseler*, 267 F.3d at 1380 ("doubts concerning whether information is material should be resolved in favor of disclosure").

Plaintiff argues that it pointed out in the FDA letter the differences between the Cheney Wecolator and the '405 stairlift relating to the Wecolator's lack of an angle adjustment feature. Although it is true that plaintiff told the FDA that the Wecolator had no angle adjustment, this argument cuts against plaintiff by negative inference with respect to the Stair–Glide units. Because plaintiff pointed out that the Wecolator was different from the '405 stairlift with respect to the angle adjustment feature, its failure to discuss the comparison with the Stair–Glide units is strong evidence that it saw no such difference with respect to these units. "Where an applicant knows of information the materiality of which may be readily be determined, he or she cannot intentionally avoid learning of its materiality, even through gross negligence; in such cases the district court may find that the applicant should have known of the materiality of the information." *Brasseler*, 267 F.3d at 1380. "Typically, a finding of inequitable conduct hinges on whether the evidence as a whole indicates that patentees or their representatives acted with the intent to deceive." *Id.; see also Symbol Technologies, Inc. v. Opticon, Inc.*, 935 F.2d 1569, 1582 (Fed. Cir.1991). Moreover, although plaintiff argues that the Wecolator lacked an angular adjustment slot, it remains silent as to the Wecolator's seat assembly. This silence is telling given the fact that Wecolator had an invalidating pivotable seat assembly. In fact, plaintiff gained an allowance of claim 15 by arguing that its off-center swivel mechanism was novel, which the Wecolator establishes is not the case. *See* 35 U.S.C. § 102(a) ("A person is not entitled to a patent if the invention was known or used by others in this country, or patented or described in a printed publication ... before the invention thereof by the applicant for patent.").

Plaintiff asserts that all relevant Cheney prior art was before the patent office during the prosecution of the '405 patent,

including the Voves/Cheney patent (No. 4,913,294), which was referred to in the '405 patent, and three other Cheney patents (No. 2,507,887, No. 3,966,022 and No. 2,212,388). Defendants argue that despite plaintiff's assertion that "all relevant Cheney art" was before the patent office, plaintiff did not submit anything disclosing the Wecolator's seat assembly. (None of the Cheney patents plaintiff cited disclose this feature of the Wecolator.) A patent applicant has a duty to disclose all material prior art of which the applicant is aware. *Precision Instrument Manufacturing Co. v. Auto. Maintenance Mach. Co.,* 324 U.S. 806, 818, 65 S.Ct. 993, 89 L.Ed. 1381 (1945); *FMC Corp. v. Hennessy Industries, Inc.,* 836 F.2d 521, 526 n. 6 (Fed.Cir. 1987) ("one should not be able to cultivate ignorance, or disregard numerous warnings that material information or prior art may exist, merely to avoid actual knowledge of that information or prior art").

■ Defendants have made a clear and convincing showing that plaintiffs knew about the Stair–Glide 65, Stair–Glide 37 and Cheney Wecolator before the '405 patent issued. Because it is undisputed that these stairlifts invalidate the '405 patent claims at issue, any prior art pertaining to either the seat assembly or angle adjustment of these units qualifies as material. In failing to disclose this material prior art during its prosecution of the '405 patent, plaintiff engaged in inequitable conduct. The direct and circumstantial evidence regarding plaintiff's failure to disclose material prior art to the patent office makes this an exceptional case and makes it unnecessary to decide defendants' remaining contentions: that plaintiff's founder, the '405 inventor or other high-ranking employees had actual knowledge of material prior art because of their substantial experience in the stairlift industry or that plaintiff pursued this lawsuit knowing of prior art that would render its patent invalid. *See Hughes v. Novi American, Inc.,*

724 F.2d 122, 124 (Fed.Cir.1984) (patent owner cannot pursue litigation if he or she knows of information that would render patent invalid). Defendants' motion for attorney fees will be granted as to plaintiff's patent infringement claim.

### 2. The Lanham Act

■ Under the Lanham Act, the court may award reasonable attorney fees to the prevailing party in exceptional cases. 15 U.S.C. § 1117(a). An exceptional case requires clear and convincing evidence. *Finance Inv. Co. (Bermuda) Ltd. v. Geberit AG,* 165 F.3d 526, 533 (7th Cir.1998). Section 1117 " 'provide[s] protection against unfounded suits brought by trademark owners for harassment and the like.' " *Id.* (quoting *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.,* 754 F.2d 738, 746 (7th Cir. 1985)); *Door Systems, Inc. v. Pro–Line Door Systems, Inc.,* 126 F.3d 1028 (7th Cir.1997) (exceptional case under Lanham Act suit can be one that is oppressive because it so lacks merit).

Defendants argue that plaintiff added the Lanham Act claim (as well as the antidumping claim) to its patent lawsuit in an attempt to force defendants out of the United States stairlift market. Plaintiff alleged in its complaint that defendants violated the Lanham Act by advertising falsely on their website that plaintiff offered its stairlift for self-installation. Specifically, defendants' website provided the following:

Q: How does the Acorn Stairlift compare against the Bruno SRE–1[5]50?

A: We hear that one or two other stairlift manufacturers are not following our lead, and are offering their product for self-installation. So, just for comparison, this is what you would need to install a Bruno SRE–1550:

[list of tools]

Compare this cost, with the tools required to install an Acorn 120 Superglide. Then consider that the Bruno installation instructions run to more than 20 pages of text. There is no other stairlift available, that is easier to install than the Acorn Superglide.

Plaintiff avers that it does not allow its dealers to sell its stairlift for self-installation and, as a result, defendants' statements are false. In support of their assertion to the contrary, defendants submitted the affidavit of Carol Varhalla, who avers that she bought plaintiff's stairlift for self-installation from two of its dealers. Plaintiff contends that Varhalla's testimony is inadmissible hearsay because what the dealers told her is offered for the truth of the matter asserted. Defendants do not contest plaintiff's hearsay contention. Although there might be an argument that the Varhalla affidavit is not hearsay because such a statement by plaintiff's dealer might be an admission by a party opponent, *see* Fed.R.Evid. 801(d)(2)(C) ("a statement made by a person authorized by the party to make a statement concerning the subject" is not hearsay), defendant has waived any such argument. *See Central States, Southeast and Southwest Areas Pension Fund v. Midwest Motor Express, Inc.,* 181 F.3d 799, 808 (7th Cir.1999) ("Arguments not developed in any meaningful way are waived."). (For example, two question come to mind concerning plaintiff's hearsay assertion in light of Rule 801(d)(2)(C): first, whether plaintiff's dealer would be an authorized person and second, whether a statement concerning self-installation would be a statement "concerning the subject.")

In any event, given that plaintiff avers that it does not allow any of its 500 dealers to sell stairlifts for self-installation and that it will terminate any dealer that does so, it was not harassing or oppressive for plaintiff to bring its Lanham Act claim even if defendant uncovered two dealers who did not adhere to plaintiff's policy. Defendants did not produce the Varhalla affidavit or any other evidence supporting their assertions that plaintiff offers its stairlifts for self-installation until summary judgment. Because of plaintiff's policy against self-installation, plaintiff had no reason to believe that some dealers were offering its stairlifts for self-installation until the evidence of the two dealers was brought to its attention. Under these circumstances, plaintiff's pursuit of Lanham Act claims cannot be viewed as so lacking in merit that it can be fairly described as an exceptional case. Therefore, defendants' motion for attorney fees as to these claims will be denied.

### B. *Motion for Sanctions and Motion for Costs*

Plaintiff filed a motion for sanctions pursuant to 28 U.S.C. § 1927. Other than referring to § 1927 in the caption and in the final paragraph of its brief in support of this motion and in opposition to plaintiff's motion for attorney fees, plaintiff fails to make any arguments in support of its § 1927 claim. As stated earlier, arguments not made are waived. Plaintiff's motion for sanctions will be denied. Finally, as is standard procedure, the clerk of court will determine the merits of defendants' motion for costs.

### ORDER

IT IS ORDERED that

1. Defendants Acorn Mobility Services Ltd.'s and Acorn Stairlifts, Inc.'s motion for attorney fees is GRANTED in part and DENIED in part. Defendants' motion for attorney fees is GRANTED as to plaintiff's patent infringement claim and DENIED as to plaintiff's Lanham Act claim;

2. Defendants may have until August 29, 2003, in which to file and serve an

itemized statement of the fees incurred for the defense of plaintiff's patent infringement claims. Plaintiff may have until September 17, 2003, in which to serve and file their objections to the fees; and

3. Plaintiff Bruno Independent Living Aids, Inc.'s motion for sanctions is DENIED;