**TENNECO AUTOMOTIVE OPERATING COMPANY INC., Plaintiff,**

v.

**VISTEON CORPORATION, Defendant.**

No. Civ. 03–1030–SLR.

United States District Court, D. Delaware.

June 28, 2005.

George Pazuniak, James Michael Olsen, and Francis DiGiovanni, of Connolly Bove Lodge & Hutz, L.L.P., Wilmington, DE, for Plaintiff, Gary H. Nunes, D. Scott Sud-

derth, Barry S. Goldsmith, John F. Morrow, Jr., of Womble Carlyle Sandridge & Rice, L.L.P., Tysons Corner, VA, of counsel.

Thomas C. Grimm, and Leslie A. Polizoti of Morris, Nichols, Arsht & Tunnel, Wilmington, DE, for Defendant, Harold V. Johnson, James R. Sobieraj, Timothy P. Lucier of Brinks Hofer Gilson & Lione, Chicago, IL and Raymond J. Vivacqua, and James K. Cleland of Brinks Hofer Gilson & Lione, Ann Arbor, MI, of counsel.

## MEMORANDUM OPINION

SUE L. ROBINSON, Chief Judge.

## I. INTRODUCTION

On November 10, 2003, plaintiff Tenneco Automotive Inc. filed the present action against defendant Visteon Corporation, alleging infringement of U.S. Patent Nos. 4,969,264 ("the '264 patent") and 5,118,476 ("the '476 patent") (collectively "the patents in suit"). The court has jurisdiction over this matter under 28 U.S.C. §§ 1331, 1338(a). Presently before the court is plaintiff's motion for partial summary judgment on defendant's defense of unenforceability. (D.I.175) For the reasons set forth below, the court grants plaintiff's motion.

## II. BACKGROUND

### A. The Patents In Suit

On June 12, 1986, Leonard J. Dryer ("Dryer") and Thomas J. Schwarte ("Schwarte") filed U.S. Patent Application No. 06/873,684 ("the '684 application"). (D.I. 149 at J–019) This application, which originally included both product and process claims, was abandoned on June 15, 1990. (*Id.* at J–29 to J–033, J–089)

On April 1, 1988, Dryer and Schwarte filed U.S. Patent Application No. 07/156,-838 ("the '838 application"), which was a continuation-in-part of the '684 application. (*Id.* at J–121) The '264 patent issued from the '838 application. (*Id.* at J–209, J–220) Dryer and Schwarte assigned the '264 patent to plaintiff's predecessor in interest. (*Id.* at J–001) The claims of the '264 patent are generally directed to a method of assembly of a catalytic converter.

On September 21, 1990, Dryer and Schwarte filed U.S. Patent Application No. 07/586,419 ("the '419 application"), which was a divisional of the '838 application. (*Id.* at J–010) The '476 patent issued from the '419 application. (*Id.*) Dryer and Schwarte assigned the '476 patent to plaintiff's predecessor in interest. (*Id.*) The claims of the '476 patent are generally directed to a catalytic converter.

### B. Prosecution of the Patents In Suit

From 1985 to 1990, John Sobesky ("Sobesky") was a principal at Harness, Dickey & Pierce ("HD & P"), and was the lead attorney responsible for handling the prosecution of the '684 and '838 applications.[1] (D.I. 177, ex. A at 46) Sometime in 1988, Sobesky came down with an illness that ultimately led to his death. (*Id.* at 46–47, 102–03) As Sobesky's illness progressed, he came into the office less and managed the '684 and '838 applications from his home. (*Id.* at 189) Sobesky died in November of 1990. (*Id.* at 122, 189)

Charles D. Lacina ("Lacina") joined HD & P in 1987 as an associate. While at HD & P, Lacina worked under Sobesky, specifically on the '684 and '838 applications.[2]

---

**1.** Signature pages for both applications contain Sobesky's signature. (D.I. 149 at J–020, J–041, J–045, J–056 to J–059, J–066, J–073 to J–075, J–084 to J–085, J–087 to J–088, J–123 to J–124, J–158)

**2.** Signature pages for both applications contain Lacina's signature. (D.I. 149 at J–056 to J–059, J–066, J–073 to J–075, J–168, J–178 to J–180, J–199, J–202 to J–205, J–210)

(*Id.* at 42–43, 48, 91–93) Lacina also prosecuted the '419 application, including filing an Information Disclosure Statement citing sixteen prior art references.[3] (*Id.* at 186–87)

Gordon K. Harris ("Harris") joined HD & P in 1987 as an associate. (*Id.*, ex. B at 28) On January 1, 1989, Harris became a principal at HD & P. (*Id.*) In January of 1991, Harris assumed Sobesky's responsibilities with respect to the '838 application. (*Id.*, ex. A at 121, 158, ex. B at 37, 73–74) Harris' only involvement in the '838 application was to file a certificate of correction for the '264 patent. (D.I. 149 at J–231 to J–234; D.I. 177, ex. B at 94–95) Harris was responsible for the '419 application by the time it issued as the '476 patent, but he relied on Lacina to handle the prosecution of that application. (D.I. 177, ex. A at 157, 158; ex. B at 49, 138, 139)

### C. The Prior Art References

#### 1. Prior Art Considered by the Patent and Trademark Office ("PTO")

The applicants for the patents in suit distinguished U.S. Patent No. 4,347,219 ("Noritake") because it did not teach the steps of first inserting a preassembly (i.e., a catalyst substrate wrapped in a cushion) into a cylindrical metal tube, and then compressing the tube to reduce its diameter. (D.I. 149 at J–174 to J–177, J–193 to J–197; D.I. 150 at J–324 to J–328, J–345 to J–349, J–366 to J–368, J–381 to J–383) The applicants characterized another prior art reference, U.S. Patent No. 3,990,859 ("Waite"), as teaching "that in assembling the unit, the ceramic block be inserted into one shell, a second shell be fitted over the block, and axial pressure be applied until radial flanges abut. Waite does not teach radial deformation of the shell(s) after assembly." (D.I. 149 at J–177, J–194, J–197) The applicants also distinguished U.S. Patent No. 4,155,980 ("Santiago") because it used protrusions to compress a mat and substrate and caused non-uniform compression of the mat. (*Id.* at J–174 to J–175, J–197) According to the applicants, U.S. Patent Nos. 3,523,590 ("Straw") and 3,313,536 ("Dutton") were not relevant because they related to mufflers and shock absorbers, not catalytic converters. (*Id.* at J–177; D.I. 150 at J–328, J–348, J–383 to J–384) The applicants distinguished U.S. Patent No. 4,020,539 ("Vroman") because it pressed "clam shells" together rather than reducing the diameter of the metal body. (D.I. 149 at J–177 to J–178) Finally, applicants distinguished U.S. Patent No. 3,227,241 ("Matoon") on the grounds that it did not show a converter including a cushion or compression of a cushion by a housing. (D.I. 150 at J–329, J–349, J–385 to J–386)

#### 2. GB 2,020,190 ("GB '190")

The applicants did not disclose GB '190 as prior art. GB '190 is generally directed to a method of constructing a catalytic converter. (D.I.177, ex. F) In one embodiment of the invention, a catalyst substrate is surrounded by a fibrous mat. (*Id.* at TA–07828) This preassembly is then inserted into a metal tube and a tool forces four segments together to compress the diameter of the tube. (*Id.* at TA–07827 to TA–07828)

#### 3. DE 3,514,150 ("DE '150")

Applicants for the patents in suit also did not disclose DE '150 as prior art.

---

**3.** Several signature pages for the '419 application contain Lacina's signature. (D.I. 150 at J–244, J–302, J–303 to J–306, J–307, J–319 to J–320, J–330, J–336 to J–337, J–350 to J–351, J–357 to J–358, J–369, J–371 to J–374, J– 387 to J–388, J–394, J–400) Sobesky's signature does not appear on any documents filed in connection with the '419 application. (D.I. 150 at J–236 to J–424)

DE '150 is generally directed to a catalytic converter. (*Id.*, ex. H at TA–13049 to TA–13053) The housing of the catalytic device consists of a tube-like coat which surrounds a catalyst substrate. (*Id.* at TA–13052) A resilient fibrous mat is positioned between the outer surface of the substrate and the inner surface of the coat. (*Id.*) However, DE '150 does not explicitly describe the converter as having enlarged diameter end portions or a mat of uniform thickness that acts as the sole support of the catalyst substrate.

### D. Plaintiff's Foreign Counterpart Applications

#### 1. The French Application

On August 12, 1987, plaintiff filed French Patent Application No. FR 87 11495 ("the French application"), a counterpart to the '684 application. (*Id.*, ex. A at 123–24) This application contained the same claims as the '684 application. (*Id.*, ex. I at TA–07769 to TA–07772)

On June 3, 1988, the French Patent Office issued a search report listing nine prior art references, including DE '150 and GB '190. (*Id.*, ex. I at TA–07838) DE '150 was listed as an "X" reference, meaning that it was considered to be "particularly pertinent." (*Id.*) GB '190 was listed as an "A" reference, meaning it was considered technological background. (*Id.*)

In a July 8, 1998 letter to Sobesky, Novapat[4] discussed the "X" references in the French search report without mentioning the "A" references. (*Id.*, ex. J at TA–24555 to TA–24558) Sobesky requested, and later received, a full translation of DE '150 from Novapat. (*Id.*, ex. H, ex. J at TA–24554) On November 23, 1988,

Sobesky responded to the July 8 letter, indicating that he reviewed and agreed with Novapat's analysis and instructing Novapat to proceed as suggested in the letter. (*Id.*, ex. J at TA–24551 to TA–24552) Novapat filed a response to the French search report which later issued as French Patent No. 87 11495. (*Id.*, ex. I at TA–07756, TA–07778 to TA–07786)

#### 2. The Canadian Application

On July 31, 1987, plaintiff filed Canadian Patent Application No. 543,511 ("the Canadian application"), which is a counterpart to the '684 application. (*Id.*, ex. K at TA–07357) This application contained the same claims as the '684 application. (D.I. 195, ex. B at TA–07438)

The Canadian examiner instructed plaintiff to provide prior art cited in the prosecution of the corresponding United States and European patent applications. (*Id.* at TA–07412) On February 27, 1990, Alex E. MacRae & Co. ("MacRae")[5] responded to the Canadian examiner's request, citing DE '150 and the other "X" references cited by the French search report. (*Id.*, ex. K at TA–07411) The "A" references, including GB '190, were not cited. (*Id.*) The Canadian application issued as Canadian Patent No. 1,297,903. (*Id.* at TA–07356 to TA–07357)

### III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of proving that no genu-

---

4. Novapat is an agency that provides assistance to applicants for patents in various European patent offices. (D.I.177, exs. H, I, J)

5. MacRae is an agency that provides assistance to applicants for patents in the Canadian Patent Office. (D.I. 177, ex. K at TA–07407 to TA–7459)

ine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n. 10, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n. 1 (3d Cir.1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348 (quoting Fed.R.Civ.P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir.1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue.[6] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## IV. DISCUSSION

### A. Inequitable Conduct

 Applicants for patents and their legal representatives have a duty of candor, good faith, and honesty in their dealings with the PTO. *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed.Cir. 1995); 37 C.F.R. § 1.56(a) (2003). The duty of candor, good faith, and honesty includes the duty to submit truthful information and the duty to disclose to the PTO information known to the patent applicants or their attorneys which is material to the examination of the patent application. *Elk Corp. v. GAF Bldg. Materials Corp.*, 168 F.3d 28, 30 (Fed.Cir.1999). A breach of this duty constitutes inequitable conduct. *Molins*, 48 F.3d at 1178. If it is established that a patent applicant engaged in inequitable conduct, then the patent application is rendered unenforceable. *Kingsdown Med. Consultants v. Hollister Inc.*, 863 F.2d 867, 877 (Fed.Cir.1988).

 In order to establish unenforceability based on inequitable conduct, a defendant must establish by clear and convincing evidence that: (1) the omitted or false information was material to patentability of the invention; (2) the applicant had knowledge of the existence and materiality of the information; and (3) the applicant intended to deceive the PTO.[7] *Molins*, 48 F.3d at 1178.

---

6. Where the evidentiary burden is clear and convincing evidence, "the trial judge's summary judgment inquiry as to whether a genuine issue exists will be whether the evidence presented is such that a jury applying that evidentiary standard could reasonably find for either the plaintiff or the defendant." *Liberty Lobby*, 477 U.S. at 255, 106 S.Ct. 2505. In the context of a patentee's motion for summary judgment of no inequitable conduct, the Federal Circuit explained, "to survive summary judgment, [defendant] was required to introduce evidence from which a trier of fact could find materiality and intent by clear and convincing evidence." *Abbott Labs., v. TorPharm, Inc.*, 300 F.3d 1367, 1379 (Fed.Cir. 2002). "Both of those distinct elements must be shown by clear and convincing evidence." *Hoffmann–La Roche, Inc. v. Promega Corp.*, 323 F.3d 1354, 1359 (Fed.Cir.2003).

7. However, a defendant's proof "may be rebutted by a showing that: (a) the prior art or information was not material (e.g., because it is less pertinent than or merely cumulative

A determination of inequitable conduct, therefore, entails a two step analysis. First, the court must determine whether the withheld information meets a threshold level of materiality. A reference is considered material if there is a substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent. *Allied Colloids, Inc. v. Am. Cyanamid Co.*, 64 F.3d 1570, 1578 (Fed. Cir.1995). A reference, however, does not have to render the claimed invention unpatentable or invalid to be material. *See Merck & Co. v. Danbury Pharmacal*, 873 F.2d 1418, 1420–21 (Fed.Cir.1989). Prior art references are material when they disclose relevant features not present in cited items. *LaBounty Mfg., Inc. v. Int'l Trade Comm'n*, 958 F.2d 1066, 1075–76 (Fed.Cir. 1992). A reference may be material if it discloses a more complete combination of relevant features, even if those features are before the patent examiner in other references. *Molins*, 48 F.3d at 1180. "A reference that is cumulative to other references of record does not meet the threshold of materiality needed to prove inequitable conduct." *Id.* at 1185.

After determining that the applicant withheld material information, the court must then decide whether the applicant acted with the requisite level of intent to mislead the PTO.[8] *See Baxter Int'l, Inc. v. McGaw Inc.*, 149 F.3d 1321, 1327 (Fed. Cir.1998). "Intent to deceive cannot be inferred solely from the fact that informa-tion was not disclosed; there must be a factual basis for finding a deceptive intent." *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1116 (Fed.Cir.1996). That is, "the involved conduct, viewed in light of all the evidence, including evidence indicative of good faith, must indicate sufficient culpability to require a finding of intent to deceive." *Kingsdown*, 863 F.2d at 876 (Fed.Cir. 1988). A "smoking gun," however, is not required in order to establish an intent to deceive. *See Merck*, 873 F.2d at 1422.

Once materiality and intent to deceive have been established, the trial court must weigh them to determine whether the balance tips in favor of a conclusion of inequitable conduct. *N.V. Akzo v. E.I. Du Pont de Nemours*, 810 F.2d 1148, 1153 (Fed.Cir.1987). The showing of intent can be proportionally less when balanced against high materiality. *Id.* In contrast, the showing of intent must be proportionally greater when balanced against low materiality. *Id.*

## B. Materiality

DE '150 discloses a catalytic converter which comprises a tube, a catalyst substrate, and a resilient mat. (D.I. 177, ex. H at TA–13052) DE '150 also discloses that the resilient mat provides support for the catalyst substrate. (*Id.*) However, DE '150 does not describe: (1) a mat having uniform thickness; (2) a mat that is the sole support of the catalyst substrate; (3) a converter with a reduced center sec-

---

with prior art or information cited to or by the PTO); (b) if the prior art or information was material, a showing that the applicant did not know of that art or information; (c) if applicant did know of that art or information, a showing that applicant did not know of its materiality; (d) a showing that applicant's failure to disclose art or information did not result from an intent to mislead the PTO." *FMC Corp. v. Manitowoc Co., Inc.*, 835 F.2d 1411, 1415 (Fed.Cir.1987).

8. Intent to deceive the PTO cannot be found where the patentees did not have knowledge of the existence of a prior art reference. *Nordberg, Inc. v. Telsmith*, 82 F.3d 394, 397 (Fed.Cir.1996) ("[S]ince Nordberg could not have 'concealed' a prior art reference of which it was unaware, the district court did not clearly err in finding that Nordberg did not conceal the Saunders patent with the intent to mislead the PTO.").

tion; or (4) a converter with enlarged end portions.[9] Several prior art references independently disclose catalytic converters including a tube, a catalyst substrate and a resilient mat.[10] (*See, e.g.,* D.I. 150 at J–431 to J–452) Consequently, DE '150 is cumulative and not material.[11] Defendant does not point to any other evidence that DE '150 was material. The court concludes that defendant has not demonstrated by clear and convincing evidence that DE '150 was material. DE '150 cannot be used as part of defendant's inequitable conduct defense. *FMC Corp.,* 835 F.2d at 1415.

■■■ GB '190 discloses a method of manufacturing a catalytic converter consisting of inserting a preassembly into a tubular metal body and simultaneously forcing four segments together to reduce the diameter of the tube. None of the prior art references cited and discussed by the applicants and the examiner disclosed the steps of first inserting the preassembly into a tubular metal body and then compressing the body. In addition, communications during prosecution suggest GB '190 is material.[12] During prosecution of the '838 application, the examiner rejected claim 24 (which later issued as claim 1) as

9. Defendant argues that figure 1 of DE '150 discloses each of these four limitations. Figures support or clarify written description and claim language. *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.,* 261 F.3d 1329, 1339 (Fed.Cir.2001) ("Since nothing in the specification assigns significance to the fact that the drawings align the connecting elements parallel both to each other and to the stent's longitudinal axis, we will not allow this aspect of the drawings to be imported into the claims as a limitation."). However, figures are not used to show precise measurements unless such a purpose is specially indicated. *Hockerson–Halberstadt, Inc. v. Avia Group Int'l, Inc.,* 222 F.3d 951, 956 (Fed.Cir.2000) ("[P]atent drawings do not define the precise proportions of the elements and may not be relied on to show particular sizes if the specification is completely silent on the issue"); *In re Wright,* 569 F.2d 1124, 1127 (Cust. & Pat.App.1977) ("Absent any written description in the specification of quantitative values, arguments based on measurement of a drawing are of little value."). Nothing in the language of DE '150 indicates that the mat has uniform thickness. Thus, finding a uniformly thick mat in figure 1 would require making precise measurements without a special indication that such measurements were part of the invention. DE '150 explicitly suggests use of steel reinforcements along with the resilient mat to support the catalyst substrate. (D.I. 177, ex. H at TA–13052) Consequently, figure 1 cannot be used to establish that the mat in DE '150 is the sole support of the catalyst substrate. DE '150 presents no language to indicate the converter has a reduced central section or enlarged

diameter end portions. Without support from the specification, figure 1 cannot establish these limitations. *Advanced Cardiovascular,* 261 F.3d at 1339. Consequently, figure 1 of DE '150 does not establish any of the four limitations suggested by defendant.

10. Even if the court used figure 1 to establish the presence of a reduced center portion and enlarged diameter end portions, these same prior art references independently disclose catalytic converters including a tube, a catalyst substrate, a resilient mat, a reduced center portion and enlarged end portions. (*See, e.g.,* D.I. 150 at J–431 to J–452)

11. The fact that the French Patent Office described DE '150 as "particularly pertinent" is not suggestive of its materiality. Courts must exercise caution in relying on foreign patent prosecutions in light of differences in disclosure requirements, claim practice, form of application, and standards of patentability. *Molins,* 48 F.3d at 1180. Furthermore, despite its awareness of DE '150, the French Patent Office eventually issued claims broader than those of the '476 patent. (D.I. 149 at J–016; D.I. 177, ex. I at TA–07771)

12. The court is mindful that "the standard to be applied in determining whether a reference is 'material' is not whether the particular examiner of the application at issue considered the reference to be important; rather, it is that of a 'reasonable examiner.'" *Molins,* 48 F.3d at 1179. Nevertheless, the court finds the views of the particular examiner in this case to be probative of what reasonable examiners would consider important.

obvious in light of Noritake and Santiago. (D.I. 149 at J–164) The applicants argued that this combination was a "hindsight reconstruction" and distinguished Santiago because "[t]he outer 'shell' is not uniformly deformed in place about the mat[.]" (*Id.* at J–176) It is likely that the examiner of the '838 application, and reasonable examiners in general, would have considered the deformation of the tubular body in GB '190 to be important in a decision to allow the application to issue as a patent. The court concludes that GB '190 was a material prior art reference for the patents in suit.

### C. Intent

 Defendant failed to present any evidence that Sobesky, Lacina, or Harris had knowledge of GB '190, or its materiality. On the contrary, these attorneys only received correspondence disclosing and discussing DE '150 and the remaining "particularly pertinent" prior art references. (D.I. 177, ex. J at TA–24555 to TA–24558; D.I. 195, ex. B at TA–07409 to TA–07411) The court concludes that defendant has not demonstrated by clear and convincing evidence that Sobesky, Lacina, or Harris had knowledge of GB '190's existence or that they intended to deceive the PTO. *Nordberg,* 82 F.3d at 397; *FMC Corp.,* 835 F.2d at 1415. Consequently, GB '190 cannot be used as part of defendant's inequitable conduct defense. *Id.*

## V. CONCLUSION

For the reasons set forth above, the court finds defendant has not proven both materiality and intent by clear and convincing evidence for either DE '150 or GB '190. Consequently, the court grants plaintiff's motion for partial summary judgment on defendant's unenforceability defense. (D.I.175) An appropriate order shall issue.

### ORDER

At Wilmington this 28th day of June, 2005, consistent with the opinion that issued this same date;

IT IS ORDERED that plaintiff's motion for summary judgment of defendant's defense of unenforceability is granted. (D.I. 175)