# United States Court of Appeals for the Federal Circuit

04-1114, -1125

BRUNO INDEPENDENT LIVING AIDS, INC.,

Plaintiff-Appellant,

v.

ACORN MOBILITY SERVICES LTD.
and ACORN STAIRLIFTS, INC.,

Defendants-Cross Appellants.

Jeffrey A. McIntyre, Whyte Hirschboeck Dudek S.C., of Madison, Wisconsin, argued for plaintiff-appellant. With him on the brief were Thomas M. Pyper and Cynthia L. Buchko. Also on the brief was C. Thomas Sylke, Sylke Law Offices LLC, of Milwaukee, Wisconsin.

Michael E. Florey, Fish & Richardson P.C., P.A., of Minneapolis, Minnesota, argued for defendants-cross appellants. With him on the brief were Chad A. Hanson, William R. Woodford, John A. Dragseth and Deanna J. Reichel.

Appealed from: United States District Court for the Western District of Wisconsin

Judge Barbara B. Crabb

# United States Court of Appeals for the Federal Circuit

04-1114, -1125

BRUNO INDEPENDENT LIVING AIDS, INC.,

Plaintiff-Appellant,

v.

ACORN MOBILITY SERVICES, LTD.,
and ACORN STAIRLIFTS, INC.,

Defendants-Cross Appellants.

_____

DECIDED:  January 11, 2005
_____

Before LOURIE, GAJARSA, and LINN, <u>Circuit Judges</u>.

LOURIE, <u>Circuit Judge</u>.

## DECISION

Bruno Independent Living Aids, Inc. ("Bruno") appeals from the decision of the United States District Court for the Western District of Wisconsin awarding attorney fees to Acorn Mobility Services, Ltd. and Acorn Stairlifts, Inc. (collectively "Acorn") pursuant to 35 U.S.C. § 285 for an "exceptional case," predicated on a determination that Bruno engaged in inequitable conduct while prosecuting United States Patent 5,230,405. <u>Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs., Ltd.</u>, 277 F. Supp. 2d 965 (W.D. Wis. 2003).  In case we were to disturb the exceptional case finding, Acorn conditionally cross-appeals from the district court's decision denying further discovery on that issue.

<u>Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs., Ltd.</u>, No. 02-C-0391-C (W.D. Wis. June 9, 2003).  We affirm.

BACKGROUND

Bruno manufactures and sells "stairlifts," which are devices that allow persons with mobility impairments to ascend and descend stairways on a chair that travels along a rail.  In November 1991, Bruno filed a patent application at the United States Patent and Trademark Office ("PTO") directed to a stairlift, which issued as the '405 patent in July 1993.

In July 2002, Bruno sued Acorn, a competitor, alleging infringement of claims 5, 9, 10, and 15 of the '405 patent.  During discovery, Acorn produced numerous disclosures of prior art stairlifts that had not been considered by the patent examiner, and thereafter moved for summary judgment of noninfringement and invalidity.  Admitting that the asserted claims were invalid in view of the prior art identified by Acorn, Bruno filed a reissue application at the PTO, the fate of which is immaterial to this appeal.  In due course, the district court granted Acorn's motion for summary judgment,[1] declaring claims 5, 9, 10, and 15 invalid.  <u>Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs., Ltd.</u>, 286 F. Supp. 2d 1020 (W.D. Wis. 2003).

Subsequently, Acorn accused Bruno of having intentionally withheld invalidating prior art from the PTO, and asked the district court to declare the case "exceptional" for the purpose of awarding attorney fees under § 285.[2]  Acorn also requested additional

---

[1]    In view of Bruno's admission of invalidity, the district court deemed the issue of infringement to be moot.

[2]    In a patent infringement suit, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285 (2000).

04-1114, -1125                    2

discovery to the extent the district court required further evidence to justify a fee award. Upon briefing by both parties, the district court declared the case exceptional after determining that Bruno had engaged in inequitable conduct while prosecuting the '405 patent, and consequently denied Acorn's motion for additional discovery.

As the ground for its inequitable conduct determination, the district court found that Bruno had failed to disclose to the PTO information on several invalidating prior art stairlifts that Bruno had submitted to the Food and Drug Administration ("FDA") in seeking approval to sell a stairlift covered by the '405 patent. Observing that the disclosure to the FDA occurred concurrently with the prosecution of the '405 patent, the district court—noting the absence of a credible, good faith explanation from Bruno for not disclosing the same information to the PTO—inferred that the information had been withheld with deceptive intent. The district court thereupon concluded that Bruno had engaged in inequitable conduct, which it deemed sufficient to render the case exceptional for the purpose of imposing a fee award under § 285. Final judgment was entered in November 2003, in which Bruno was ordered to pay Acorn $399,459.32 in attorney fees. Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs., Ltd., No. 02-C-0391-C (W.D. Wis. Nov. 6, 2003).

On appeal, Bruno challenges the district court's determination of an exceptional case. In response, Acorn conditionally cross-appeals from the ruling denying additional discovery on that issue. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

DISCUSSION

Patent applicants[3] owe a "duty of candor and good faith" to the PTO. 37 C.F.R. § 1.56(a) (2004); see also Molins PLC v. Textron, Inc., 48 F.3d 1172, 1178 (Fed. Cir. 1995). A breach of this duty may constitute inequitable conduct, which can arise from a failure to disclose[4] information material to patentability, coupled with an intent to deceive or mislead the PTO. Molins, 48 F.3d at 1178. Materiality and intent must be established by clear and convincing evidence, Kingsdown Med. Consultants, Ltd. v. Hollister, Inc., 863 F.2d 867, 872 (Fed. Cir. 1988), and then weighed "to determine whether the equities warrant a conclusion that inequitable conduct occurred." Molins, 48 F.3d at 1178. The ultimate determination of inequitable conduct is therefore a matter "committed to the discretion of the trial court" and is reviewed for an abuse of discretion. Kingsdown, 863 F.2d at 876 (en banc in relevant part). The underlying findings on materiality and intent are reviewed for clear error, and will not be disturbed on appeal in the absence of a "definite and firm conviction" that a mistake has been made. Id. at 872.

A.     Knowledge of Prior Art

In its inequitable conduct determination, the district court found that Bruno deliberately withheld from the PTO information on several invalidating prior art stairlifts,

---

[3]     In the context of an inequitable conduct determination, the "applicant" includes anyone under a duty to disclose material information to the PTO pursuant to 37 C.F.R. § 1.56, namely: the inventor, the prosecuting attorney or agent, and anyone associated with the inventor or the assignee who is substantively involved in the preparation or prosecution of the application. Molins PLC v. Textron, Inc., 48 F.3d 1172, 1178 n.6 (Fed. Cir. 1995).

[4]     Because there is no general duty to conduct a prior art search, there is no duty to disclose art of which an applicant is unaware. Am. Hoist & Derrick Co. v. Sowa & Sons, Inc., 725 F.2d 1350, 1362 (Fed. Cir. 1984).

focusing its analysis on the "Wecolator" manufactured by The Cheney Company, among others.[5] While conceding awareness of the Wecolator's existence during prosecution, Bruno contends that a duty to disclose did not arise because it had failed to appreciate the Wecolator's materiality at that time.

We see no error in the district court's treatment of the Wecolator as prior art that was subject to the duty of disclosure. The record supports the district court's finding that Bruno possessed actual knowledge of the Wecolator—and that it knew or should have known of its materiality. In an April 20, 1992 letter to the FDA, Bruno sought approval to sell its SRE-1500 stairlift, which was an embodiment covered by the then-pending application that matured into the '405 patent. (J.A. 2198). In a paragraph labeled "Substantial Equivalence" in the FDA letter, William Belson, Bruno's Director of Engineering, claimed that the SRE-1500 stairlift was "similar in design and function" to the units manufactured by "Cheney Manufacturing Inc." Id. Product information on the "Weckalator" [sic] was listed as an enclosure with the FDA letter. (J.A. 2199).

Bruno argues that its claim of "substantial equivalence" between the SRE-1500 stairlift and the Wecolator was relevant only for the purpose of securing FDA approval, and that it had no bearing on whether Bruno knew the Wecolator to be material prior art for purposes of patentability. This distinction is disingenuous in light of what the record reflects: the FDA submission was prepared by William Belson, who was also involved in

---

[5]    The Wecolator is one of three prior art stairlifts analyzed by the district court. Because the circumstances surrounding Bruno's failure to disclose information on the Wecolator alone provide sufficient grounds for sustaining the inequitable conduct determination, we need not address the district court's treatment of the other two stairlifts—the American Stair-Glide models 37 and 65. See GFI, Inc. v. Franklin Corp., 265 F.3d 1268, 1275 (Fed. Cir. 2001).

the prosecution of the '405 patent and had asked Bruno's patent attorney to conduct a prior art search in preparation for filing the patent application. (J.A. 2859-61). More importantly, Bruno's distinction is not persuasive because "an applicant who knew of the art or information cannot intentionally avoid learning of its materiality . . . it may be found that the applicant 'should have known' of that materiality." FMC Corp. v. Manitowoc Co., 835 F.2d 1411, 1415 (Fed. Cir. 1987) (footnote omitted). Accordingly, we are not persuaded that the district court clearly erred in charging Bruno with knowledge of the Wecolator's materiality.

B.     Materiality

Regardless whether it knew the Wecolator to be invalidating prior art, Bruno argues that the Wecolator is simply not material, but rather is cumulative, to the information submitted to the PTO, such that its nondisclosure cannot provide a ground for finding inequitable conduct. We do not agree.

In evaluating materiality, we have consistently referred to the definition provided in 37 C.F.R. § 1.56, by which the PTO has promulgated the duty of disclosure. See, e.g., Critikon, Inc. v. Becton Dickinson Vascular Access, Inc., 120 F.3d 1253, 1257 (Fed. Cir. 1997) (discussing the version of the rule in effect since 1992); J.P. Stevens & Co. v. Lex Tex Ltd., 747 F.2d 1553, 1559 (Fed. Cir. 1984) (applying the pre-1992 version of the rule). In 1992, the definition of materiality in 37 C.F.R. § 1.56 was revised. As defined in the current version of the rule, information is material to patentability when:

> [I]t is not cumulative to information already of record or being made of record in the application, and
>     (1) It establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim; or

(2) <u>It refutes, or is inconsistent with</u>, a position the applicant takes in:
    (i) Opposing an argument of unpatentability relied on by the Office, or
    (ii) <u>Asserting an argument of patentability</u>.

37 C.F.R. § 1.56(b) (2004) (emphases added). According to the PTO's notice of final rulemaking, the rule change applied to all applications pending or filed after March 16, 1992. Duty of Disclosure, 57 Fed. Reg. 2021 (Jan. 17, 1992). Thus, the new rule was applicable during the prosecution of the '405 patent, and we evaluate the materiality of the Wecolator under the standard set forth in the applicable amended rule. In doing so, we give deference to the PTO's formulation at the time an application is being prosecuted before an examiner of the standard of conduct it expects to be followed in proceedings in the Office. In light of this definition, we discern no error in the district court's finding of materiality based on its assessment that the disclosure of the Wecolator to the PTO would have precluded Bruno from advancing certain arguments in favor of patentability.

Specifically, the prosecution history shows that Bruno amended the claim that eventually issued as claim 15 "to more clearly define the novel and nonobvious attributes," (J.A. 911), by adding a limitation that required the stairlift's swivel seat to have an off-center pivot that was proximate to the front edge of the seat. (J.A. 906). Claim 15, as issued, reads as follows:

A chairlift device comprising:
    a) a rail;
    b) a carriage unit housing motor means operatively engaging said rail, said carriage unit moving between first and second terminal positions on said rail;
    c) a seat assembly mounted to said carriage unit, said seat assembly comprising:
        i) a seat bracket having a front edge and a rear edge, a backrest being mounted at said rear edge of said bracket;

ii) a swivel tube fixed to the bottom of said seat bracket <u>proximate to said front edge of said bracket</u>;

iii) a swivel mounting bracket fixed to the top of said carriage unit and mounted to said carriage unit <u>proximate to the front of said carriage unit</u>;

iv) means for selectively locking said seat assembly in a preselected position;

wherein said swivel tube coaxially fits within said swivel mounting bracket and further wherein said swivel tube is free to rotate axially within said swivel mounting bracket.

'405 patent, col. 11, l. 22 through col. 12, l. 15 (emphases added). In patentably distinguishing the amended claim over the prior art, Bruno argued to the PTO that:

Claim [15] now calls for the swivel tube and mounting bracket to be mounted proximate to the front edge of the carriage unit and seat assembly. This feature provides several advantages neither taught nor suggested by the references cited by the Examiner.

. . . [H]aving a front offset pivot point for the seat allows the rail and other components of the chairlift to be mounted closer to the wall of the stairway than seats having center pivot points as shown in the prior art.

(J.A. 911-12).

Had the examiner known about the Wecolator, however, Bruno could not have touted the front offset swivel as a point of novelty. According to the deposition testimony of Robert Bartelt, the sole named inventor on the '405 patent, the Wecolator had an optional seat assembly with an off-center swivel that provided similar advantages over the prior art seats having center pivots. (J.A. 2532-33). The Wecolator, therefore, satisfies the criteria for materiality specified in 37 C.F.R. § 1.56(b)(2)(ii). Nevertheless, Bruno insists that the Wecolator was cumulative to the prior art of record in view of its submission of United States Patent 4,913,264 ("Voves") to the PTO. We disagree; unlike the Wecolator, the stairlift disclosed in Voves does not have a seat assembly with an offset swivel, but rather one that has a center pivot.

Thus, on the evidence presented, we do not consider the district court's finding of materiality to be clearly erroneous.

C.    Intent

Finally, Bruno ascribes error to the district court's reliance on so-called "negative inferences" to support its finding that Bruno acted with deceptive intent in failing to disclose the Wecolator to the PTO. Bruno also accuses the district court of misstating facts and according insufficient weight to certain evidence.

Based on our review of the record, these contentions do not warrant reversal. While the district court indeed provided little explicit support for its finding of intent, it is well established that, as an appellate tribunal, we review judgments, not opinions. See Black v. Cutter Labs., 351 U.S. 292, 297 (1956); Stratoflex, Inc. v. Aeroquip Corp., 713 F.2d 1530, 1540 (Fed. Cir. 1983). We therefore focus our review on whether there is sufficient evidence in the record to sustain the judgment of intent to deceive the PTO. Consol. Aluminum Corp. v. Foseco Int'l Ltd., 910 F.2d 804, 814 (Fed. Cir. 1990) ("An appellate court need not close its eyes to the record where . . . there is a way clearly open to affirm the district court's action."). In the present case, we find sufficient evidence based upon which a fair inference of deceptive intent may be drawn, in view of the high materiality of the Wecolator. See Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp., 267 F.3d 1370, 1381 (Fed. Cir. 2001) ("When balanced against high materiality, the showing of intent can be proportionally less.").

"Intent need not, and rarely can, be proven by direct evidence." Merck & Co., Inc. v. Danbury Pharmacal, Inc., 873 F.2d 1418, 1422 (Fed. Cir. 1989). Rather, in the absence of a credible explanation, intent to deceive is generally inferred from the facts

and circumstances surrounding a knowing failure to disclose material information. See Paragon Podiatry Lab., Inc. v. KLM Labs. Inc., 984 F.2d 1182, 1193 (Fed. Cir. 1993). The particular facts and circumstances of the present case correspond in all relevant aspects to those cases in which we have upheld inferential findings of deceptive intent on similar key evidence. See, e.g., LaBounty Mfg., Inc., v. United States Int'l Trade Comm'n, 958 F.2d 1066, 1076 (Fed. Cir. 1992) (ruling that inference of deceptive intent was supported by evidence of applicant making patentability arguments that could not have been made had the withheld prior art been disclosed); Merck, 873 F.2d at 1420-22 (ruling that inference of deceptive intent was supported by "damning" evidence that included applicant having submitted material information to the FDA while simultaneously withholding it from the PTO, and attempting to explain the disparity of its FDA and PTO submissions in a way that "strains credulity"). The fact that an official of Bruno, who was involved in both the FDA and PTO submissions, chose to disclose the Wecolator to the FDA, but not to the PTO, certainly supports a finding of deceptive intent to withhold the disclosure from the PTO.

More importantly, Bruno has not proffered a credible explanation for the nondisclosure, and an inference of deceptive intent may fairly be drawn in the absence of such an explanation. Cf. Dayco Prods., Inc. v. Total Containment, Inc., 329 F.3d 1358, 1367 (Fed. Cir. 2003) ("Intent to deceive cannot be inferred simply from the decision to withhold the reference where the reasons given for the withholding are plausible."). Normally, it can be expected that an innocent party will be motivated to try to present convincing reasons for its actions or inaction. That did not occur here.

Accordingly, we cannot assign clear error to the district court's inferential finding that Bruno intentionally withheld the Wecolator prior art in an attempt to mislead the PTO.

Because the district court's findings on materiality and intent were not clearly erroneous, there was no abuse of discretion in its determination that Bruno procured the '405 patent through inequitable conduct. Because inequitable conduct can be one of several bases sufficient to make a case exceptional for the purpose of awarding attorney fees under § 285, see A.B. Chance Co. v. RTE Corp., 854 F.2d 1307, 1312 (Fed. Cir. 1988), we do not find reversible error in the determination of an exceptional case.

We have considered the parties' other arguments and conclude that they are either unpersuasive or unnecessary for resolution of this appeal.

CONCLUSION

For the foregoing reasons, we conclude that the district court did not err in its determination of an exceptional case based on its determination that Bruno committed inequitable conduct. Acorn's cross-appeal for additional discovery has been accordingly rendered moot.

Because Bruno's appeal was not frivolous, we deny Acorn's motion for an award of double costs and attorney fees under Fed. R. App. P. 38.

AFFIRMED