# United States Court of Appeals for the Federal Circuit

04-1060, -1092


JAMES A. FRAZIER and MANTIS WILDLIFE FILMS, PTY. LIMITED,

Plaintiffs-Appellants,

and

PANAVISION, INC.,

Plaintiff,

v.


ROESSEL CINE PHOTO TECH, INC., ROESSEL CPT RENTALS, INC.,
and P+S TECHNIK GmbH FEINMECHANIK,

Defendants-Cross Appellants.


Alfred R. Fabricant, Ostrolenk, Faber, Gerb & Soffen, LLP, of New York, New York, argued for plaintiff-appellant. With him on the brief was Lawrence C. Drucker.

Peter J. Toren, Sidley Austin Brown & Wood LLP, of New York, New York, argued for defendants-cross appellants. With him on the brief was Steven E. Klein.

Appealed from: United States District Court for the Central District of California

Judge Gary A. Feess

# United States Court of Appeals for the Federal Circuit

04-1060, -1092

JAMES A. FRAZIER and MANTIS WILDLIFE FILMS, PTY. LIMITED,

Plaintiffs-Appellants,

and

PANAVISION, INC.,

Plaintiff,

v.

ROESSEL CINE PHOTO TECH, INC., ROESSEL CPT RENTALS, INC.,
and P+S TECHNIK GmbH FEINMECHANIK,

Defendants-Cross Appellants.

_____

DECIDED:  August 2, 2005

_____

Before BRYSON, LINN, and DYK, <u>Circuit Judges</u>.

Opinion for the court filed by <u>Circuit Judge</u> LINN.  Concurring-in-part and dissenting-in-part opinion filed by <u>Circuit Judge</u> BRYSON.

LINN, <u>Circuit Judge</u>.

James Frazier ("Frazier") appeals from the United States District Court for the Central District of California's ("district court") judgment that held U.S. Patent No. 5,727,236 ("the '236 patent") unenforceable for inequitable conduct and awarded attorney fees based on its finding that this case is exceptional.  <u>Frazier v. Roessel Cine</u>

Photo Tech, Inc., No. CV 99-10425 (C.D. Cal. Apr. 9, 2003) ("Inequitable Conduct Opinion"); Frazier v. Roessel Cine Photo Tech, Inc., No. 99-10425 (C.D. Cal. Aug. 8, 2003) ("Attorney Fee Opinion").  Because the district court clearly erred in finding the Roessel advertisement material to the prosecution of Frazier's application, we reverse the inequitable conduct determination based on that finding.  However, we affirm the district court's remaining inequitable conduct determination based on the submission of a misleading video during prosecution of the Frazier application.  Because we reverse a portion of the district court's judgment relied upon in finding the case exceptional, we vacate the district court's award of attorney fees and remand for the district court to reconsider its award in view of our disposition of the case.

## I.  BACKGROUND

Frazier is a photographer and film maker.  Since at least the mid-1980s, Frazier had been using an aerial image lens ("AI lens") that he designed and built, which allowed the appearance of an extreme depth of field, i.e., it allowed an object very close up and a background at a distance to both appear in focus.  The AI lens, however, is a form of trick photography in that it allows for insertion of a small object at the location of an intermediate image within the lens.  A macro lens then relays the small object in focus along with the background image from the field lens.  The result is a focused image of a small object that appears very close up superimposed on a focused image of a background from far away.  The images produced create the appearance that objects very close and very far away are able to be in focus at the same time.  AI lenses were known in the art.

Frazier showed a video shot with the AI lens at a conference in 1993. This led to his introduction to Panavision, Inc. John Farrand, president and CEO of Panavision, contacted Frazier in August 1993 and expressed interest in the lens used to make the video. Frazier, however, did not inform Panavision what type of lens he was using to obtain the extreme depth of field. Farrand also expressed interest in helping Frazier obtain a patent for his lens and in obtaining the right to manufacture the lens for Panavision.

In the fall of 1993, Frazier provided Panavision with photographs taken with the AI lens or an ordinary wide angle lens. Iain Neil, Panavision's Vice President of Research and Development and Optics, was impressed by the extreme depth of field exhibited by some of the photographs. He was particularly impressed with two shots. The first showed a caterpillar in the foreground in focus with a distant background also in focus. The second showed a film canister in the foreground with a bridge in the background, both in focus.

Panavision entered into a confidentiality agreement with Frazier in order to learn how Frazier took the shots. In late 1993, Frazier met with Neil and Farrand in Hong Kong. Frazier described several lens systems he had allegedly designed to achieve extreme depth of field. One of the lens systems was Frazier's AI lens. Frazier also disclosed a second lens system called the "L-shaped lens." Frazier allegedly developed this lens in Australia in the latter part of 1993. The L-shaped lens was not used in the making of any of the photographs or other footage provided to Panavision up to that time. An embodiment of the L-shaped lens design, called the "Z" lens, contained three optical axis portions, each at right angles to the adjoining portions. The Z lens also

contained rotatable joints allowing the optical axis portions to swivel with respect to each other. Panavision agreed to seek a patent on the Z lens on Frazier's behalf. Panavision also developed a commercial embodiment of the Z lens known as the Panavision/Frazier lens ("P/F lens").

Ultimately, Panavision hired Conrad Solum, Jr., a patent attorney, to prosecute a patent application based on the Z lens. Solum drafted the application based in part on the photographs provided to him by Neil, which he had been led to believe were taken with the lens that was the subject of the patent application. Solum filed the application on June 30, 1994.

Soon after filing the application, Neil discovered an advertisement depicting a Roessel T5.9 Supersnorkel periscope-type lens in an issue of Shoot magazine. Neil wrote the date of the magazine, July 15, 1994, on the advertisement and placed a copy in his Frazier lens project file. Neil kept a copy of the advertisement because the Supersnorkel was a form of periscope lens similar to the Frazier lens on which he was working. Neil also testified that he gave a copy of the advertisement to Solum, although the ad was never submitted to the PTO. In an office action issued on December 11, 1996, the Examiner cited U.S. Patent No. 5,469,236 (the "Roessel patent") directed to a periscope-type lens similar to the Supersnorkel depicted in the advertisement but did not issue a rejection based on that patent. The application that led to the issuance of the Roessel patent was filed on January 19, 1995, and the Roessel patent issued on November 21, 1995.

During prosecution, the claims in the Panavision application were rejected a number of times based on prior art. In response to many of these rejections, Solum

argued that the increased depth of field achievable with the claimed invention distinguished the claimed invention from the prior art. In response to the fourth rejection, Solum argued again the importance of depth of field to the claimed invention in attempting to overcome an indefiniteness rejection. He also submitted a video "[i]n the interests of demonstrating to the Examiner the features and uniqueness of the optical system of this patent application." The video was an instructional film for users of the P/F lens that was put together with footage supplied by Frazier. The district court found the statement referencing the "optical system of this patent application" to be inaccurate in that "the most striking demonstrative scenes depicted on the video were shot with either the AI Lens, a normal, wide-angle objective lens, or the L-shaped Lens." Inequitable Conduct Opinion at 26. Frazier admitted that a particularly impressive scene depicting a caterpillar in the foreground and an airplane in the background with the words "Depth of Field" superimposed was filmed with his AI lens. Id. at 26-27. The examiner subsequently allowed the claims of the Frazier application without further rejection.

Panavision and Frazier brought suit against Roessel Cine Photo Tech, Inc. ("Roessel") and others for infringement of the '236 patent. Panavision settled with the defendants in 2001 and is no longer party to this suit. The district court held that the '236 patent was unenforceable based on the failure to submit the Roessel advertisement and based on the falsity of the submitted video. Inequitable Conduct Opinion at 41-61. The district court also found the case to be exceptional and awarded attorney fees to the defendants based on both occurrences of inequitable conduct and numerous cited instances of litigation misconduct. Attorney Fee Opinion at 3-11.

Frazier timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## II. DISCUSSION

### A. Standard of Review

A district court's holding that a patent is unenforceable for inequitable conduct involves underlying findings of materiality and intent to deceive based on clear and convincing evidence and an equitable determination of unenforceability based on those findings. Ruiz v. A.B. Chance Co., 234 F.3d 654, 670 (Fed. Cir. 2000); Semiconductor Energy Lab. Co. v. Samsung Elecs. Co., 204 F.3d 1368, 1373 (Fed. Cir. 2000). This court reviews the underlying fact findings of materiality and intent for clear error and the ultimate inequitable conduct determination for an abuse of discretion. Ruiz, 234 F.3d at 670. Where a district court finds a case exceptional under 35 U.S.C. § 285, this court reviews the underlying factual findings for clear error and legal conclusions without deference. Rambus Inc. v. Infineon Techs. AG, 318 F.3d 1081, 1088 (Fed. Cir. 2003). Once the district court has found a case to be exceptional, we review any award of attorney fees for an abuse of discretion. Id.

### B. Analysis

Inequitable conduct requires a breach of the duty of candor that is both material and undertaken with intent to deceive the Patent and Trademark Office ("PTO"). Li Second Family Ltd. P'ship v. Toshiba Corp., 231 F.3d 1373, 1378 (Fed. Cir. 2000). Breaches of the duty of candor may include submission of false material information or failure to disclose material information. Kingsdown Med. Consultants, Ltd. v. Hollister Inc., 863 F.2d 867, 872 (Fed. Cir. 1988). The district court in this case held the '236

patent unenforceable based on the submission of a video containing footage shot with lenses other than that claimed in the '236 patent and based on the failure to disclose an advertisement. Frazier argues that the district court's findings of intent and materiality with respect to his submission of the video are both clearly erroneous. Frazier additionally challenges the district court's findings of materiality and intent with respect to the failure to disclose the advertisement. Frazier argues that the advertisement was not prior art, that the advertisement was not material, and that no intent to deceive was shown.

## 1. Submission of the Video

In support of his argument regarding the materiality of the video, Frazier raises numerous challenges to the district court's findings of fact. Frazier argues that there was insufficient proof to show that the examiner was misled by the video because the claimed lens system was capable of producing the shots on the video. Frazier credits his own recreation of the disputed video footage using the P/F lens system covered by the claims of the '236 patent and his experts' testimony as to the capabilities of the P/F lens system as evidence that the district court erred in finding the submission of the video material. Frazier's numerous arguments directed to materiality overlook the fact that mere submission of the video with footage shot with other than the claimed invention constituted a sufficiently material misrepresentation without regard to whether the P/F lens could create the same shots. As we explained in General Electro Music Corp. v. Samick Music Corp.:

> Samick thus appears to argue that Maxwell's statement that he conducted a prior art search was not false because he could have truthfully stated that he had good knowledge of the prior art. Samick's argument misses the point. The issue is not whether an alternative statement would have

been truthful, but whether Maxwell's actual statement that a prior art search was conducted was false.

19 F.3d 1405, 1410 (Fed. Cir. 1994); see also Perseptive Biosystems, Inc. v. Pharmacia Biotech, Inc., 225 F.3d 1315, 1322 (Fed. Cir. 2000) ("[T]he materiality of intentional false statements may be independent of the claims of the patent."); Rohm & Haas Co. v. Crystal Chem. Co., 722 F.2d 1556, 1571 (Fed. Cir. 1983) ("In contrast to cases where allegations of fraud are based on the withholding of prior art, there is no room to argue that submission of false affidavits is not material."). Moreover, the district court found that the P/F lens system was incapable of reproducing the footage on the video shot with the AI lens. Frazier's own expert admitted at trial during cross examination that the P/F lens would be unable to recreate the caterpillar shot as it was captured by the AI lens and submitted to the PTO. Trial Tr. at 128 (Dec. 4, 2001) (testimony of Allen Mann). The district court's finding of materiality is not clearly erroneous.

Frazier additionally challenges the district court's finding of intent. Essentially, Frazier argues that the district court did not give adequate weight to the testimony of Neil, Solum, and Frazier that they had no intent to deceive. The district court, however, based its finding of intent on Frazier's conduct alone. Any testimony as to the absence of intent from Neil and Solum on this issue was irrelevant. Indeed, the district court's finding of intent was based on Frazier's failure to inform Solum or the PTO that portions of the video were not shot with the claimed lens system even though Frazier was fully aware of this fact when the video was submitted. The district court found that Frazier's claimed lack of intent to mislead was not credible based on his repeatedly testifying to different versions of events under oath. Frazier does not challenge the district court's finding that he was not credible. Nor does Frazier challenge the district court's finding

that he knew that portions of the video were not shot with the claimed lens system when it was submitted to the PTO. Instead, Frazier argues that he could not have intended to deceive unless he believed that the P/F lens system was incapable of achieving the depth of field of the AI lens. Frazier's argument, if correct, would require proof that he subjectively believed the video submission was deceptive. This court has repeatedly said that direct evidence of intent is unavailable in most cases and unnecessary in any event. Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs. Ltd., 394 F.3d 1348, 1354 (Fed. Cir. 2005) ("'Intent need not, and rarely can, be proven by direct evidence.' Rather, in the absence of a credible explanation, intent to deceive is generally inferred from the facts and circumstances surrounding a knowing failure to disclose material information." (quoting Merck & Co. v. Danbury Pharmacal, Inc., 873 F.2d 1418, 1422 (Fed. Cir. 1989))); Ulead Sys., Inc. v. Lex Computer & Mgmt. Corp., 351 F.3d 1139, 1146 (Fed. Cir. 2003) ("Direct evidence of deceptive intent is not required; rather it is usually inferred from the patentee's overall conduct."). The district court's unchallenged findings establish that Frazier allowed a video to be submitted to the PTO in order to represent the capabilities of the claimed lens, knowing that portions of the video were shot with a different lens.[1] The district court's finding of intent is not clearly erroneous on these facts.

Finally, Frazier points out that the district court also relied on other evidence to support its finding of intent regarding the submission of the video. The district court

---

[1] We do not hold that every time erroneous information is submitted to the PTO with knowledge of the error that the intent prong of the inequitable conduct inquiry is satisfied. Such conduct may sometimes be properly characterized as gross negligence, which "does not of itself justify an inference of intent to deceive."

relied on evidence of a possible attempt by Frazier's associate Diana Serrano to expedite the PTO's handling of the patent application by exploiting political contacts. The district court also relied on evidence that Frazier provided Solum with photographs taken with an aerial image lens or wide angle lens, and that Frazier falsely represented to Solum that the photographs were taken with a prototype lens. Frazier argues that this evidence should not properly have been considered because it was irrelevant to the question of intent in submitting the video to the examiner. We are convinced that even if the district court had not considered this evidence, it still would have reached the same result. Frank's Casing Crew & Rental Tools, Inc. v. PMR Techs., Ltd., 292 F.3d 1363, 1376 (Fed. Cir. 2002) (holding that we may sustain a district court's finding of inequitable conduct if we are convinced that absent any irrelevant evidence relied upon by the district court it would have reached the same conclusion).

### 2. Failure to Disclose the Roessel Advertisement

Frazier additionally challenges the district court's conclusion that the '236 patent is unenforceable for inequitable conduct based on the failure to disclose the Roessel advertisement. Frazier essentially argues that the district court's findings of intent and materiality with respect to the Roessel advertisement were clearly erroneous. We agree with Frazier that the district court's finding of materiality of the Roessel advertisement is clearly erroneous and that the district court's inequitable conduct determination based on that failure to disclose must be reversed.

The district court articulated four bases for finding the Roessel advertisement to be material. First, the district court found that "Neil should have been on notice that a

Kingsdown Med. Consultants, Ltd. v. Hollister Inc., 863 F.2d 867, 876 (Fed. Cir. 1988)

potential issue of prior inventorship between overlapping claims of the Frazier Patent and the Roessel Patent had arisen and that it would be necessary to commence an interference action to resolve them." Inequitable Conduct Opinion at 55-56. The district court, however, did not find that any claim of the Roessel patent even arguably interfered with any claim in Frazier's then-pending application. Thus, it is unclear why any possibility of an interference should have been apparent from the Roessel patent, much less the advertisement discovered six months before Roessel's application was filed and two and a half years before the first mention of the Roessel patent in the prosecution history of Frazier's application.

The district court apparently concluded that one of ordinary skill in the art would recognize that the Supersnorkel lens featured in the Roessel advertisement was sufficient to raise an issue of prior inventorship with respect to Frazier's application. Referring to the Roessel advertisement, the district court said,

> One skilled in the art would recognize that the presence of long tubing of relatively small diameter between an objective lens on the one end and the camera on the other clearly denotes that the tubing must contain one or more relay lenses or field lens/relay lens combinations to transmit the image from the objective lens to the film plane in the camera.

Id. at 37 (emphasis added). The district court's finding essentially acknowledged that one of ordinary skill in the art could not confidently assume that the Supersnorkel lens depicted in the advertisement had a field lens as required by the claims of Frazier's application. Indeed, although the defendant's expert Milton Laikin ("Laikin") testified that one would expect to find a field lens within the Supersnorkel based on the advertisement, he also agreed with the statement that a person of ordinary skill in the art "would not necessarily know whether or not there was a field lens, although [he or

---

(en banc).

she] might suspect that there could be." When he inspected the actual disassembled Supersnorkel lens depicted in that advertisement, it in fact did not have a field lens.

The district court additionally found that the Supersnorkel ad disclosed "three optical axes arranged at right angles to each other and which were connected by two rotatable joints." Id. at 57. However, the defendant's expert Laikin admitted that these limitations were already before the examiner in other prior art. Moreover, Laikin also admitted that other limitations of the claims were not disclosed by the Supersnorkel ad, such as the creation of an intermediate image within the lens with an image size greater than that of the image at the film plane. Thus, the district court's finding that the ad was material to the patentability of Frazier's pending claims because it raised an issue of prior inventorship is clearly erroneous. Contrary to the dissent, the advertisement does not disclose enough to suggest its materiality to one skilled in the art.

The district court's second basis for finding the Roessel advertisement material was that "[t]he Super-Snorkel ad put Neil on notice . . . that the lens had been 'known or used by others' prior to Frazier's application date." Inequitable Conduct Opinion at 56. The district court concluded that failing to submit the ad allowed Frazier to avoid having to make a showing of prior invention under 35 U.S.C. §§ 102(a) and 102(g)(2). However, the district court again failed to establish a proper basis for materiality. As discussed supra, the advertisement by itself did not disclose enough to put one of ordinary skill in the art on notice of its materiality with respect to the claims of Frazier's application. Even if Neil was able to conclude that the Supersnorkel was an embodiment of Roessel's patent such that Neil recognized a possibility that the invention described in the Roessel patent predated Frazier's filing date, it is unclear that

the Roessel patent would have raised any substantial question of patentability with respect to the claims of Frazier's application. The district court did not find that the Roessel patent discloses a field lens as required by the claims of Frazier's application, and none is apparent in the specification. Thus, the district court's materiality finding on this basis is clearly erroneous.

In its third basis for finding materiality, the district court concluded that Neil and Solum should have investigated the facts necessary to determine the materiality of the Supersnorkel depicted in the Roessel advertisement. Id. at 57. The district court relied on Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp., 267 F.3d 1370, 1383 (Fed. Cir. 2001), for the proposition that notice of the existence of information that appears material and questionable cannot be ignored. In Brasseler, this court said, "Where an applicant knows of information the materiality of which may so readily be determined, he or she cannot intentionally avoid learning of its materiality, even through gross negligence . . . ." Id. at 1380. However, we went on to say, "The mere possibility that material information may exist will not suffice to give rise to a duty to inquire . . . ." Id. at 1382. Moreover, this court has repeatedly reaffirmed the proposition that "[a]s a general rule, there is no duty to conduct a prior art search, and thus there is no duty to disclose art of which an applicant could have been aware." FMC Corp. v. Hennessy Indus., Inc., 836 F.2d 521, 526 n.6 (Fed. Cir. 1987); see also Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs., Ltd., 394 F.3d 1348, 1351 n.4 (Fed. Cir. 2005); Nordberg, Inc. v. Telsmith, Inc., 82 F.3d 394, 397 (Fed. Cir. 1996); Am. Hoist & Derrick Co. v. Sowa & Sons, Inc., 725 F.2d 1350, 1362 (Fed. Cir. 1984). A requirement that an applicant disclose art of which the applicant should have been aware overlooks the intent element

of inequitable conduct. Am. Hoist & Derrick, 725 F.2d at 1362 ("Nor does an applicant for patent, who has no duty to conduct a prior art search, have an obligation to disclose any art of which, in the court's words, he 'reasonably should be aware.' [That] portion [of the court's instruction] overlooks the intent requirement.").

Taking the appropriate standard into account, the district court clearly erred in finding that the Roessel advertisement was material based on Neil and Solum's failure to investigate the Supersnorkel to determine whether it contained all the limitations of the claims of Frazier's application. As we said in Brasseler, "The mere possibility that material information may exist will not suffice to give rise to a duty to inquire . . . ." Brasseler, 267 F.3d at 1382. While Neil had knowledge of the advertisement, its materiality was not readily determinable. As discussed supra, Laikin's testimony does not rise to the level of clear and convincing evidence of the materiality of the advertisement. Although Neil's clipping of the advertisement and placing it in the Frazier patent application file is evidence that Neil thought the advertisement had some connection with the Frazier application, Neil's explanation that the reason he saved the advertisement was simply because it depicted a periscope lens similar to the P/F lens was credited by the district court. Inequitable Conduct Opinion at 37.

The district court's final reason for finding that the Roessel advertisement was material was that it was evidence of contemporaneous invention, an important consideration under 35 U.S.C. § 103. Id. at 56-57. However, as discussed supra, the evidence that Neil should have understood that the Roessel advertisement depicted what was claimed in the Frazier application is less than clear and convincing. Moreover, the Supersnorkel does not in fact contain a field lens and would not have

been covered by the claims of Frazier's application. Thus, it is difficult to discern how the Roessel advertisement is evidence of contemporaneous invention. We conclude that the district court's finding of materiality is clearly erroneous on this basis as well. Thus, we reverse the district court's inequitable conduct determination based upon the failure to disclose the Roessel advertisement.

### 3. Exceptional Case Determination

Frazier additionally challenges the district court's finding that this was an exceptional case and the district court's award of attorney fees under 35 U.S.C. § 285. Frazier argues that neither the district court's findings regarding litigation misconduct nor the district court's bases for inequitable conduct justify an award of attorney fees in this case. As to litigation misconduct, Frazier has shown no clear error in the district court's findings. With respect to the underpinnings of the district court's award, we are affirming the district court's determination of inequitable conduct based on the submission of the video and reversing the district court's inequitable conduct determination based on the failure to disclose the Roessel advertisement. Because the district court based its attorney fee award in part on its determination that Frazier committed inequitable conduct in not disclosing the Roessel advertisement, Attorney Fee Opinion at 5-6, we vacate the attorney fee award and remand the case to the district court for its determination of the effect, vel non, of our reversal of but one of the two underpinnings of that award.[2] Molins PLC v. Textron, Inc., 48 F.3d 1172, 1186

---

[2] We note that the district court found that "[t]ogether with Neil and Frazier, Solum used information gathered by an individual named Diana Serrano to 'expedite the process' of obtaining a personal interview with the examiner on Frazier's case," but that "this ploy was not ultimately considered a separate and independent basis for finding inequitable conduct." Attorney Fee Opinion at 6. Because the district court did not find

(Fed. Cir. 1995) ("[I]f the underpinnings [of an award of attorney fees under section 285] are partially reversed, we may remand for further evaluation by the trial court.").

## III.  CONCLUSION

Because the district court clearly erred in finding the Roessel advertisement to be material to the prosecution of the Frazier application, we reverse the district court's finding of inequitable conduct based on the failure to disclose that advertisement. However, because the district court did not clearly err in finding the submission of the video during the prosecution of the '236 patent to be a material misrepresentation made with intent to deceive, we affirm the district court's inequitable conduct determination based on that submission.  Having reversed one basis for the district court's award of attorney fees, we vacate the district court's award and remand for reconsideration in view of our decision in this case.

<u>AFFIRMED-IN-PART, REVERSED-IN-PART, VACATED-IN-PART AND REMANDED</u>

---

that this conduct supported an inequitable conduct determination, upon remand the district court should not consider such evidence in determining whether to award attorney fees under section 285, except to the extent it relates to litigation misconduct. Id. at 8-9 (discussing plaintiffs' repeated and improper withholding of discoverable materials related to Diana Serrano as a basis for finding litigation misconduct); Brasseler, 267 F.3d at 1380 ("The prevailing party may prove the existence of an exceptional case by showing:  inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement.").

# United States Court of Appeals for the Federal Circuit

04-1060,-1092

JAMES A. FRAZIER and MANTIS WILDLIFE FILMS, PTY. LIMITED,

Plaintiffs-Appellants,

and

PANAVISION, INC.,

Plaintiff,

v.

ROESSEL CINE PHOTO TECH, INC., ROESSEL CPT RENTALS, INC.,
and P+S TECHNIK GmbH FEINMECHANIK,

Defendants-Cross Appellants.

BRYSON, <u>Circuit Judge</u>, concurring-in-part and dissenting-in-part.

I agree with the majority's treatment of Frazier's submission of the deceptive video to the PTO. I disagree, however, with the majority's disposition of the claim of inequitable conduct with regard to the Roessel advertisement.

In ruling that the failure to disclose the Roessel advertisement did not constitute inequitable conduct, the majority relies heavily on the fact that it was not clear that the advertised lens contained one limitation in the '236 patent, namely the field lens. However, a reference may still be material even if it lacks one limitation of the claimed invention. In <u>Baxter International, Inc. v. McGaw, Inc.</u>, this court stated that "[a] difference in a single element, however important to the patented invention, is not

automatically dispositive of the issue of materiality." 149 F.3d 1321, 1328 (Fed. Cir. 1998). The court in Baxter added:

> Simply because the Borla Device lacked a pre-slit septum does not make it likely that a reasonable examiner would consider the reference unimportant in deciding whether to allow the patent. In other words, materiality is not analyzed in a vacuum. It is not dependent on a single element viewed in isolation. Rather, it is judged based upon the overall degree of similarity between the omitted reference and the claimed invention in light of the other prior art before the examiner. The district court therefore properly considered the totality of the claimed features in determining whether the Borla Device was material to the patentee's application.

Id. In this case, the court found that the Roessel advertisement contained many features present in the '236 patent: a periscope lens for cinematography with a "long, narrow tube-shaped body," "the same 'dual-swivel' concept that Frazier claimed in his application," and three optical axes. Those features, which were shown in the advertisement, were the features that Frazier argued made his lens patentable over the prior art. In light of Frazier's argument for patentability made to the examiner, it was reasonable for the district court to find that the Roessel advertisement was material. See GFI, Inc. v. Franklin Corp., 265 F.3d 1268, 1274 (Fed. Cir. 2001).

In some cases, a feature might be so important to the patent that its absence from a prior art reference makes the reference immaterial. However, the arguable absence of the field lens in the Roessel advertisement does not have that significance. While the defendant's expert, Mr. Laikin, testified that a person of ordinary skill in the art "would not necessarily know whether or not there was a field lens," he also stated that the absence of a field lens would simply mean that the lens barrel would have to be larger. In other words, the field lens simply allows the lens barrel to be a "bit smaller" than it otherwise would. Therefore, the lack of the field lens should not play such a

prominent role in assessing the materiality of the advertisement. Indeed, if the absence of a single limitation in an undisclosed prior art reference were enough to render that reference immaterial as a matter of law for purposes of an inequitable conduct claim, the only reference that could render a patent unenforceable for inequitable conduct would be a reference that would render the same patent invalid for anticipation. The doctrine of inequitable conduct is not so narrow that it applies only when patent claims are invalid. Li Second Family Ltd. P'ship v. Toshiba Corp., 231 F.3d 1373, 1380 (Fed. Cir. 2000) ("Information concealed from the PTO may be material even though it would not invalidate the patent.").

Beyond the field lens, the majority states that Mr. Laikin admitted that the "three optical axes" limitation was already before the examiner and that the Roessel advertisement did not disclose other claim limitations. That is not enough, in my view, to render the district court's materiality determination clearly erroneous. In the first place, Frazier's expert admitted that while other prior art before the examiner contained the three optical axes limitation, the advertisement was "a closer reference to the claims of Mr. Frazier" than the other references. Additionally, the district court specifically addressed and rejected the suggestion that the Roessel advertisement was cumulative:

> The Roessel ad is not cumulative of any reference that was before the Examiner. As Frazier himself argued to the Examiner, the Nettmann references do not describe a lens system with two points of swivel rotation, as Roessel discloses. As Frazier also argued, the Latady patent does not contain three optical axes, as Roessel discloses. Nor does any single Hajnal patent disclose a duel-swivel design on its own, as Roessel does. Finally, as Frazier argued, the Hopkins patent is not directed to the field of cinematography, as Roessel is.

In light of the deference due to the district court's factual determination of materiality, I would uphold the full attorney fee award.