NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ALFRED T. GIULIANO, CHAPTER 7 TRUSTEE OF THE RITZ ESTATE, CPM ELECTRONICS, INC, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, E.S.E. ELECTRONICS, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, MFLASH, INC.,**
*Plaintiffs-Appellants*

**v.**

**SANDISK LLC,**
*Defendant-Appellee*

---

2016-2166

---

Appeal from the United States District Court for the Northern District of California in No. 4:10-cv-02787-SBA, Judge Saundra Brown Armstrong.

---

Decided: July 27, 2017

---

PETER SLATIN RATNER, Kellogg, Huber, Hansen, Todd, Evans & Figel, PLLC, Washington, DC, argued for plaintiffs-appellants. Also represented by AMELIA FRENKEL, JOSEPH S. HALL.

RAOUL D. KENNEDY, Skadden, Arps, Slate, Meagher & Flom LLP, Palo Alto, CA, argued for defendant-appellee. Also represented by MICHAEL H. MENITOVE, New York, NY.

————————————

Before PROST, *Chief Judge,* BRYSON and HUGHES, *Circuit Judges.*

HUGHES, *Circuit Judge.*

Plaintiffs-Appellants Alfred T. Giuliano, Chapter 7 Trustee of the Ritz bankruptcy estate; CPM Electronics Inc.; E.S.E. Electronics, Inc.; and MFLASH, Inc. filed this *Walker Process* antitrust class action against SanDisk LLC. The district court granted summary judgment in favor of SanDisk. Because the record does not show evidence sufficient to raise a triable issue on SanDisk's intent to deceive the Patent and Trademark Office, we affirm.

I

Alfred T. Giuliano, Chapter 7 Trustee of the Ritz bankruptcy estate; CPM Electronics Inc.; E.S.E. Electronics, Inc.; and MFLASH, Inc. (collectively, Ritz) brought this *Walker Process* antitrust class action alleging SanDisk fraudulently obtained U.S. Patent Nos. 5,172,338 and 5,991,517 from the Patent and Trademark Office and enforced the patents to monopolize the NAND flash memory markets.

SanDisk moved for summary judgment asserting, in part, that it did not obtain either the '338 or '517 patents by fraud on the PTO. Specifically, SanDisk argued that Ritz had not produced any evidence to prove that two undisclosed prior art references by Dr. Richard Simko

("Simko references") were material and were withheld with the intent to deceive the PTO.[1]

Ritz, in opposition, submitted evidence purporting to create a triable issue on materiality and intent to deceive. To establish materiality, Ritz relied on a summary judgment ruling in a prior district court action involving the '338 and '517 patents brought by SanDisk against STMicroelectronics (STM) and an administrative law judge determination from a concurrent International Trade Commission (ITC) investigation involving the same patents. In the district court action, STM filed *Walker Process* counterclaims against SanDisk alleging in part that SanDisk had withheld the Simko references. At summary judgment, the court determined that there was a question of fact regarding the materiality of the Simko references. In reaching this decision, the court relied on expert testimony presented by STM and findings from the concurrent ITC investigation involving the '338 and '517 patents. Here, although Ritz submitted the prior summary judgment ruling and ALJ determination from that ITC investigation to the district court, Ritz did not proffer any separate expert testimony.

To establish intent to deceive, Ritz again relied primarily on the STM summary judgment ruling. According to Ritz, the STM court had identified at least three circumstances that created a material issue of fact as to SanDisk's intent. First, SanDisk had retained Dr. Simko,

---

[1] Ritz also argues the same regarding the undisclosed prior art references Japan Unexamined Patent Application S62-188100 ("JP100 patent") and Great Britain Patent GB 2,029,145. Because the evidence of deceptive intent as to those two references is far less than the evidence of deceptive intent as to the Simko references, we affirm the summary judgment ruling as to those references as well.

the inventor of the undisclosed references, as a consultant in connection with a reexamination of the '338 patent. Second, SanDisk cited the Simko references during the prosecution of related U.S. Patent No. 5,293,560 just a few years prior to the '338 patent reexamination and '517 patent application. Third, SanDisk had entered the Simko references into a searchable database designed to ensure compliance with its disclosure obligations to the PTO. In addition to relying on the STM summary judgment order, Ritz also submitted copies of the database entries, excerpts from the file history of the '560 patent, and excerpts from the testimony of Eliyahou Harari, one of SanDisk's founders, from an ITC hearing involving the '338 and '517 patents.

The district court determined that the STM summary judgment order and the ALJ determination were inadmissible as evidence. After finding that Ritz failed to provide independent evidence of intent to deceive, the court granted SanDisk's motion for summary judgment. Ritz appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## II

We review summary judgment determinations de novo. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016). Summary judgment is only appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In reviewing summary judgment, "[t]he evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in [the non-movant's] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Ritz argues that the district court erred in granting summary judgment to SanDisk on the issue of intent to deceive. According to Ritz, a reasonable juror could rely on the following to conclude that SanDisk intended to

defraud the PTO by failing to disclose the Simko references: (1) SanDisk hired Dr. Simko as a consultant in the '338 patent reexamination proceedings, which took place at the same time as the '517 patent application;  (2) SanDisk cited the Simko references in a related patent application for the '560 patent a few years prior to the '338 patent reexamination and '517 patent application; and (3) SanDisk had entered the Simko references into a searchable database created specifically for identifying relevant prior art.[2]

To overcome summary judgment, a *Walker Process* claimant must present evidence showing that the patentee obtained a patent "through actual fraud upon the PTO." *Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1346 (Fed. Cir. 2007). To prove *Walker Process* fraud, the plaintiffs must make high threshold showings of intent and materiality. *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1070 (Fed. Cir. 1998). The misrepresentation or omission alleged to be fraudulent

---

[2]  Ritz, in its opening brief, also provided a fourth reason for why a reasonable juror could conclude that SanDisk intended to deceive the PTO: SanDisk knew that JP100 also needed to be disclosed to the PTO because the PTO had rejected claims in another SanDisk application related to the '517 over that reference. But Ritz never raised this argument at the district court. Plaintiffs' Opposition to SanDisk Corporation's Renewed Motion for Summary Judgment and Memorandum of Points and Authorities (Opposition to SJ), Dkt. 322, Ritz v. SanDisk Corp., No. 4:10-cv-2787-SBA  (N.D. Cal. Nov. 10, 2015). Even if Ritz had preserved the argument, its only supporting evidence is the STM summary judgment order, which is not admissible as evidence and cannot create a genuine issue of material fact. *Nipper v. Sipes*, 7 F.3d 415, 417 (4th Cir. 1993).

"must evidence a clear intent to deceive the examiner and thereby cause the PTO to grant an invalid patent." *Id.* And a finding of inequitable conduct does not by itself support a finding of *Walker Process* fraud. *Dippin' Dots*, 476 F.3d at 1348. The claim "must be based on independent and clear evidence of deceptive intent . . . ." *Nobelpharma*, 141 F.3d at 1071. "Direct evidence of intent to deceive or mislead the PTO is rarely available but may be inferred from clear and convincing evidence of the surrounding circumstances." *Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.*, 552 F.3d 1033, 1047 (9th Cir. 2009) (citing *Purdue Pharma L.P. v. Endo Pharms. Inc.*, 438 F.3d 1123, 1133–34 (Fed. Cir. 2006)); *see also Tyco Healthcare Grp. LP v. Mutual Pharm. Co., Inc.*, 762 F.3d 1338 (Fed. Cir. 2014) (holding that a *Walker Process* claimant has the "burden to show 'no less than clear, convincing proof of intentional fraud involving affirmative dishonesty.'" (citing *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1364 (Fed. Cir. 1998))).

We conclude that Ritz has not brought forward sufficient evidence for a reasonable juror to find that SanDisk intended to deceive the PTO. As an initial matter, Ritz overstates the record when it argues SanDisk hired Dr. Simko as a consultant in the '338 patent reexamination proceedings. At the district court, Ritz relied predominantly on the STM summary judgment order to support its contention that Dr. Simko was hired as a consultant for the '338 patent reexamination. Opposition to SJ at 14, *Ritz*, (No. 4:10-cv-2787-SBA). Notwithstanding the fact that the STM summary judgment order is inadmissible as evidence, *Nipper*, 7 F.3d at  417, the summary judgment order's description of the evidence states only that Dr. Simko was hired "as a litigation consultant for the ITC 382 Investigation" and does not state that Dr. Simko was

hired for the '338 patent reexamination.[3]  *SanDisk Corp. v. STMicroelecs., Inc.*, No. C 04-4379, 2008 WL 4615605, at \*2 (N.D. Cal. Oct. 17, 2008).  Ritz also pointed to the testimony of Mr. Harari, procured at an ITC Hearing during an ITC investigation.  While Mr. Harari testified that Dr. Simko became a consultant of SanDisk, he could not recall any details about when he was hired or what he did with SanDisk.  J.A. 12254–55.  Thus, contrary to Ritz's assertion, the record does not support the fact that Dr. Simko was hired as a consultant for the '338 patent reexamination.

Next, Ritz argues that SanDisk cited the Simko references during the prosecution of the "related ['560] patent."  But the '560 patent does not claim priority to the '338 or '517 patents.  Nor is it a parent, continuation, continuation-in-part, or divisional application of those patents.  Instead, all three patents have one inventor in common.  Ritz has not submitted any testimony or evidence explaining how, other than the overlap of one inventor, the '560 patent is "related" to the '338 and '517 patents.  And the '560 patent's prosecution history reveals no information on why the Simko references were cited.  *See* J.A. 12212–13.  Therefore, the evidence in the record shows only that the Simko references were cited during the prosecution of the '560 patent, a patent whose relationship to the '338

---

[3]  While the STM summary judgment order did state in the analysis section that Dr. Simko had been hired "in connection with the '338 reexamination," this was clearly referring to the fact that Dr. Simko had been hired to assist with the ITC 382 investigation, which occurred at the same time as the '338 reexamination. *SanDisk*, 2008 WL 4615605, at \*8.  The STM summary judgment order did not describe any evidence indicating that Dr. Simko had been hired specifically to assist with the '338 reexamination.

and '517 patents is unknown except for the fact that all three patents have an overlapping inventor.

Finally, Ritz argues that SanDisk must have known of the Simko references because SanDisk entered the references into a searchable database created specifically to identify relevant prior art. Here, Ritz has supported its argument by submitting the database entries as evidence. J.A. 12032; 12047. The database entries contained the reference's patent number, title, inventor's name, assignee's name and publication date. J.A. 12064–65. Ritz also submitted testimony from a SanDisk employee about the database. J.A. 12063–71.

In sum, Ritz has brought forward the following evidence at summary judgment to show SanDisk's intent to deceive: (1) SanDisk cited the Simko references in a patent application that shares one inventor with the '338 and '517 patents and (2) SanDisk entered the Simko references into a database. This evidence in the aggregate is not enough to raise a triable issue of material fact on intent to deceive.

For example, in *Nordberg, Inc. v. Telsmith, Inc.*, 82 F.3d 394 (Fed. Cir. 1996), we considered the situation where an undisclosed reference was found amongst hundreds of patents in the patentee's files. We found that the mere presence of an undisclosed reference, where there was no evidence showing that the patentee had searched and found a copy of that reference during the prosecution of the patent, was not enough to show an intent to deceive for purposes of inequitable conduct, let alone the heightened standard for *Walker Process* claims. Similarly here, SanDisk's database contained hundreds of entries, J.A. 12071, and Ritz submitted no evidence showing that SanDisk had searched the database entries during the prosecution of the '338 and '517 patents.

The additional fact that SanDisk had cited the Simko references during the prosecution of the '560 patent is still

not enough to survive summary judgment. This is because Ritz has not pointed to any evidence showing that when SanDisk cited the Simko references, it knew of the specific information in the Simko references alleged to be material to the '338 and '517 patents. The fact that SanDisk had entered the Simko references in a database is not sufficient to close that gap. As we explained in *Exergen Corporation v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1330 (Fed. Cir. 2009), "[a] reference may be many pages long, and its various teachings may be relevant to different applications for different reasons. Thus, one cannot assume that an individual, who generally knew that a reference existed, also knew of the specific material information contained in that reference." The '560's prosecution history does not reveal why the references were disclosed to the PTO. *See* J.A. 12212–13. Perhaps most problematically, Ritz has provided no evidence regarding how the '560 patent is relevant to the '338 and '517 patents, beyond the fact that all share one overlapping inventor.

In conclusion, when viewing the totality of the evidence in the record, we find that Ritz has not come forward with enough evidence to create a triable issue of material fact on intent to deceive. In light of this, we do not reach Ritz's remaining arguments on appeal. Accordingly, we affirm the district court's grant of SanDisk's motion for summary judgment.

**AFFIRMED**

COSTS

Costs to Appellee.